700 So.2d 1123 (1997)
Rose R. DURYEA
v.
David HANDY, Facility Management of Louisiana, Charles C. Foti, Jr., Louisiana State Exposition District, State of Louisiana, Orleans Parish Criminal Sheriff's Office, et al.
No. 96-CA-1018.
Court of Appeal of Louisiana, Fourth Circuit.
October 1, 1997.
*1125 Raymond C. Burkart, Jr., Kendra LaNata, New Orleans, for Plaintiff-Appellee Rose R. Duryea.
Usry & Weeks, T. Allen Usry, Craig E. Frosch, Paul E. Mayeaux, Metairie, for Defendants-Appellants David Handy and Sheriff Charles C. Foti, Jr.
Brad G. Theard, Metairie, for Defendants-Appellants Gentilly Carnival Club, Inc. and the Louisiana Guaranty Association.
Before SCHOTT, C.J., and KLEES, LOBRANO, ARMSTRONG and WALTZER, JJ.
KLEES, Judge.
Defendants David Handy, Sheriff Charles C. Foti, Jr., and the Gentilly Carnival Club appeal the judgment of the district court finding them 90 percent at fault for the injuries sustained by plaintiff Rose Duryea. After consideration and review of the record, we affirm in part and reverse in part, and render judgment.
On February 9, 1991, the Saturday before Mardi Gras, the Endymion parade (presented by the defendant Gentilly Carnival Club) was rolling through the streets. Plaintiff Rose Duryea, an officer of the New Orleans Police Department, was assigned to patrol the parade route, but finished her duties before the parade was fully over. She was relieved of duty and headed to the Endymion Extravaganza, taking place within the Superdome. Apparently Duryea was seeking a friend inside.
Ms. Duryea entered the Superdome through an unauthorized entrance on Girod Street; all the while, Endymion floats were still entering the Superdome as riders threw beads and trinkets to the waiting crowds. She headed into the walkway between the floats and the bleachers, an area patrolled by defendant David Handy, a deputy with the Orleans Parish Criminal Sheriff's Office. As she approached Handy, a float rider threw a bag of beads to an elderly woman sitting in the balcony area. His throw fell short, however, and the beads landed on the ground near Handy. The woman urged Handy to toss them up to her, and he leaned down to do so just as Duryea came upon him. Handy swung his arm up to toss the beads; as he did so, his hand struck Duryea's nose with the full momentum of his throw.
Duryea sustained considerable damage to her nose; she has undergone two reconstructive surgeries, including one which required the transfer of cartilage from her ear for reconstructive purposes. This ear is now permanently misshaped. Also, Duryea anticipates a third nasal surgery.
Duryea brought suit for damages against Deputy David Handy, the Orleans Parish Criminal Sheriff's Office, the Louisiana Superdome, Facility Management of Louisiana, *1126 the Gentilly Carnival Club, Inc. (Krewe of Endymion), and Louisiana Insurance Guaranty Association (Gentilly's insurer.) The Louisiana Superdome and Facility Management of Louisiana were dismissed from the suit. The damages were fixed at $50,000.00 and judgment was rendered in Duryea's favor against Handy and the Orleans Parish Criminal Sheriff's Office (responsible for 70% of the damages) and against the Gentilly Carnival Club and LIGA (responsible for 20% of the damages.) Duryea was held to be 10% at fault for the accident. From this judgment, defendants appeal.
Before moving on to the various assignments of error made by the defendants in this case, the applicability of La. R.S. 9:2796 should be discussed. This statute absolves krewes from liability for injuries caused by objects thrown to parade spectators, except in extreme and unusual circumstances. The trial court held that this statute was inapplicable to the situation at hand; Duryea was not a parade spectator, and Handy was not a member of the Krewe of Endymion. We find this reasoning persuasive and affirm the judgment in that regard.

DURYEA'S INJURY
Although they do not assign this as an error on the part of the trial court, defendants Handy and the Orleans Parish Criminal Sheriff's office urge this court to reconsider the facts of this case: specifically, they assert that Duryea failed to prove that the injuries to her nose were actually caused by the incident in question. Some evidence adduced at trial suggests that Duryea may have had an earlier injury, which was either exacerbated by the accident at the parade or actually wholly responsible for her troubles.
However, Duryea also introduced evidence at trial to support her claims. Although the Sheriff's office would now have us overturn the trial court's findings of fact on subjective opinions about the credibility of the witnesses, we find no reason to do so. Sufficient evidence was introduced to support Duryea's claim in this regard, and thus we cannot say the trial court erred in finding for her.

OFFICER HANDY'S NEGLIGENCE
The defendants in this case argue that the trial court erred in finding David Handy negligent in his behavior on the night in question. The analysis generally employed by our courts in determining liability for negligence consists of a four-part test: (1) Was the conduct in question a substantial factor in bringing about harm to the plaintiff? (2) Did the defendant owe a duty to the plaintiff? (3) Was the duty breached? (4) Was the risk, and the harm, caused within the scope of protection afforded by the duty breached? See Mart v. Hill, 505 So.2d 1120 (La.1987); Roberts v. Benoit, 605 So.2d 1032 (La.1991)
Officer Handy admittedly threw a bag of beads very forcefully to the raised bleacher seats without looking to see if anyone was in his way, which led to his striking Duryea. Therefore his conduct is certainly a substantial factor in bringing about her harm. His duty must certainly include protecting those in his vicinity from harm, and causing no harm himself. When he struck Duryea in the face, he breached that duty. Handy argues that he could not have expected Duryea to be in that area, and thus his failure to notice her is understandable. We find this assertion unconvincing. Although no spectators were supposed to be in the restricted area, the very nature of Mardi Gras parades would have called for greater vigilance on Handy's part; the large and often boisterous crowds generally resist whatever limits are put upon their movement. As a security officer hired to deal with such crowds, Handy should have been on the lookout for any intruder in this area, whether for the protection of riders, other spectators, or the errant viewer herself. Therefore the trial court was correct in holding Handy negligent in his actions. The allocation of fault for those actions, however, we will deal with separately.

DURYEA'S FAULT
All four defendants also assert that the trial court erred in allocating only 10% of the fault for this accident to Duryea. She deliberately entered an unauthorized area, *1127 one meant to be clear of any and all pedestrian traffic. By all accounts of the incident, Handy did not see her before the accident, but she saw Handy and still continued moving into his area, even when he bent down to pick up the bag of beads. They argue that she was in the best position to avoid the accident, either by entering through an authorized entrance or at least staying clear of Handy.
Duryea does not fully discuss her presence in an unauthorized area. As for her inability to avoid Handy, she asserts that she did not anticipate his action in throwing the beads up into the crowd. Duryea claims she had no way of knowing what he was about to do.
We find this assertion somewhat disingenuous; this court takes judicial notice of the fact that security officers at such parades regularly throw fallen beads and trinkets into the crowds. As a New Orleans police officer herself, Duryea should be familiar with this local custom. Furthermore, she should certainly understand the importance of maintaining the tightest security procedures possible at Mardi Gras, and should not breach those procedures herself by entering an unauthorized area. If a confused tourist had blundered into this zone accidentally, and been injured in the process, this court would be more tolerant of the transgression. However, Duryea, a policewoman and parade security officer herself, violated the rules established for everyone's safety, and thus endangered herself.
Therefore, Duryea was correctly held to be partially at fault for the accident.

HANDY'S EMPLOYMENT
The defendants in this case part ways on the issue of which entity is best described as Handy's employer at the time of this accident. The trial court found that both the Orleans Parish Criminal Sheriff's office and the Gentilly Carnival Club were Handy's employers at the time of the parade; all defendants contest this, suggesting that Handy only had one employer. The Orleans Parish Criminal Sheriff's office points out that Handy was not on official duty at the time of the incident; he was operating as a security guard for the Endymion parade, a service for which the Gentilly Carnival Club pays. The Gentilly Carnival Club, on the other hand, argues that Handy remained an employee of the Sheriff's office throughout, and suggests that the Sheriff's office was essentially subcontracted to provide security for the Endymion parade. The Sheriff's office strongly rejects that suggestion.
The Sheriff's office points to the recent case of Luccia v. Cummings, 94-416, 646 So.2d 1142 (La.App. 5 Cir. 11/16/94.) In this case, an off-duty levee district police officer, still in uniform, was working as a bouncer at a local nightclub; when a club patron spilled some ice on the officer, he grew angry and attacked that patron. In its decision, the Fifth Circuit stated that, even though the officer was clothed in the uniform of the police department, he was not acting in the course and scope of his employment. The Sheriff's office urges this court to consider that case and the present one as nearly identical.
The Gentilly Carnival Club wishes to draw attention to different facts. The record shows that Handy was working as security for the parade through the Sheriff's office, on what is known as a "paid detail." The Gentilly Carnival Club contacted some higher-echelon officers at the police department and asserts that this means they essentially subcontracted their security needs to the Sheriff's office through an informal arrangement. Handy never spoke to anyone from the Gentilly Carnival Club. In fact, the Club would not have been allowed to offer any instructions to Handy; the testimony of several parties reveals that the Sheriff's office does not allow the carnival krewes to offer their own security guidelines to the officers.
We must then apply the four-prong test set out in LeBrane v. Lewis, 292 So.2d 216 (La.1974) to determine whether Handy was acting in the course of his employment with the Sheriff's office at the time of the incident, or in the course of his employment with the Gentilly Carnival Club. That determination is to be made in the light of these four factors: (1) the act was primarily employment rooted; (2) the act was reasonably incidental to the performance of the employee's *1128 duties; (3) the act occurred within normal work hours and (4) the act occurred on the employer's premises. See Luccia, supra, p. 1144.
Handy's actions  responding to the wishes of krewe guests while on the parade route  are far more tied to his employment by the Gentilly Carnival Club than his employment by the Sheriff's office. Although the complicated relationship between the two entities makes a determination difficult, we must hold the Gentilly Carnival Club to be Handy's sole employer during the time in question. As a result, we will not hold the Sheriff's office liable for damages incurred by Duryea in this incident.

APPORTIONMENT OF FAULT
Since we have released the defendant Orleans Parish Criminal Sheriff's office from fault, we must now reapportion the fault between defendants Handy and the Gentilly Carnival Club and plaintiff Rose Duryea. The trial court originally found Duryea 10% at fault, the Gentilly Carnival Club 20% at fault, and Officer Handy and the Sheriff's office 70% at fault.
In allocating fault, Louisiana courts look to several factors, enumerated in Watson v. State Farm Fire and Casualty Insurance Company, 469 So.2d 967 (La.1985.) Courts must ask (1) whether the conduct resulted from inadvertent behavior or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Id at 974.
Handy's conduct, as examined under these guidelines, is negligent if not particularly egregious. Handy should have been examining the area more closely for trespassers; this was among his primary duties as a security officer for the parade. However, as he did not see anyone in his immediate vicinity, his errant throw was inadvertent rather than deliberate or reckless. Furthermore, the act of throwing a bag of beads is not one so inherently dangerous that he would have regarded it as extremely risky and unadvisable.
Duryea's conduct is not as easily explained. She deliberately went into an unauthorized area, knowing it to be off-limits and using the advantage of her uniform to gain admittance. She did see Handy bending down towards the bag of beads, which should have put her on notice that his action was likely; since she saw Handy, she had the capacity to avoid the accident.
We therefore apportion 65% liability to Handy and his employer, the Gentilly Carnival Club, and 35% liability to Duryea.

CREDIT FOR MEDICAL EXPENSES
In their final assignment of error, the Gentilly Carnival Club and the Louisiana Insurance Guaranty Association argue that the trial court erred in failing to allow them credit for those medical expenses paid of behalf of plaintiff Duryea by her hospitalization carrier. They call the court's attention to La. R.S. 22:1386, which states that any person having a claim against an insurer through the provisions of that policy must first exhaust those rights under such policy.
In the Reasons for Judgment, the trial court stated that the $50,000 damage award was "consistent with the number of surgeries, the change in appearance, the lost wages and medical expenses and the pain and suffering." The trial court does not indicate how much of the award is attributed to each item. Since Duryea has yet another surgery to undergo, we do not know what portion of this award is meant to cover future expenses. Since LIGA failed, at trial, to present any evidence showing how much, if any, of Duryea's expenses have already been covered by her insurer Total Benefits Service, and cannot demonstrate that Duryea does not have such damages above and beyond what her insurer may cover, LIGA has failed to show that it is entitled to credits in this case.
Accordingly, for the reasons expressed above, the judgment is affirmed as to Duryea, Handy and the Gentilly Carnival Club, reversed as to the Orleans Parish Criminal Sheriff's Office's liability, in the proportions *1129 of 65% liability to Handy and the Gentilly Carnival Club and 35% to the plaintiff Duryea.
AFFIRMED IN PART; REVERSED IN PART.
SCHOTT, C.J., dissents.
SCHOTT, Chief Judge, dissenting.
Defendant, Officer David Handy, was not negligent in the execution of his duties. While Handy's conduct was a cause in fact of plaintiff's harm, plaintiff failed to establish the duty/risk element of her cause of action. Legal duty is imposed to protect plaintiff from a particular type of harm, personal injury, which arises in a particular manner. There must be an ease of association or reasonableness between the duty and the risk. The risk encountered is a proper focus of inquiry in finding the existence of duty. Further, foreseeability alone is not the sole inquiry because some risks are not foreseeable and some which are may not be included within the scope of duty. Lejeune v. Rayne Branch Hospital, 556 So.2d 559, 569 (La. 1990).
In this case, the question is whether the risk of injury from being struck by a man throwing a pack of beads to a parade watcher while standing in a restricted area is within the scope of duty owed by Handy.
The act of throwing a pack of beads to a person in the stands normally does not present an unreasonable risk of harm. Handy was in the darkened Superdome with loud music playing and noise from tractors pulling floats and crowds screaming. Further, he was in a restricted area on the floor for the purpose of prohibiting guests from entering the area where floats were entering the Dome. His attention was focused on the guests and traffic flow.
Plaintiff had placed herself in this area which was restricted because it was a designated danger zone. She created the risk which occasioned her harm by abusing her uniform and credentials to gain access to this area. Further, though plaintiff may have been officially "off duty," she essentially placed herself back "on duty" when she entered a zone restricted to officers on duty. She too had the duty to exercise a greater degree of care than that expected of an ordinary guest and she failed to exercise that duty.
The scope of Handy's duty to act reasonably in the performance of his duties, to be observant and protect did not encompass the risk that an "off duty" officer would silently approach him from a blind spot. There is no ease of association between Handy's duty to stop parade watchers from entering the float/parade zone where they could be seriously injured and the injury which occurred in this case. See Dunne v. Orleans Parish School Board, 463 So.2d 1267, 1270 (La.1985). Because there was no duty to protect plaintiff from this particular harm arising in this particular manner, there is no need to reach the issue of division of fault.