734 So.2d 874 (1999)
Lioney WRIGHT and Barbara Wright
v.
SKATE COUNTRY, INC., et al.
No. 98-CA-0217.
Court of Appeal of Louisiana, Fourth Circuit.
May 12, 1999.
Rehearing Denied June 30, 1999.
*876 Joseph W. Thomas, New Orleans, La, And Henry P. Julien, Jr., New Orleans, La, for Plaintiffs/Appellees.
Avis Marie Russell, City Attorney, Franz L. Zibilich, Chief Deputy City Attorney, Annabelle H. Walker, Deputy City Attorney, New Orleans, La, for Defendant/Appellant/City Of New Orleans.
Court composed of Chief Judge ROBERT J. KLEES, Judge STEVEN R. PLOTKIN, Judge CHARLES R. JONES, Judge MIRIAM WALTZER, and Judge JAMES F. McKAY.
PLOTKIN, Judge.
The City of New Orleans appeals a $2,300,000 judgment in favor of the administrators of the estate of Lioney Wright, who received injuries due to a gunshot wound inflicted as he was leaving the Skate Country in New Orleans East on September 3, 1990. For the reasons detailed below, we reverse and render judgment dismissing the suit against the City of New Orleans.

FACTS
On September 3, 1990, Lioney Wright, who was 19 at the time, went to the Skate Country skating rink in New Orleans East. At some point during the evening, a fight broke out among the many teenagers and young adults present at Skate Country estimated by various witnesses in the record at between 200 and 400 people. Mr. Wright became involved in the fight. As a result he and his girlfriend Denise Williams were taken by a uniformed off-duty New Orleans police officer working a "paid detail" to the skating rink office, effectively separating Mr. Wright from the other young people involved in the fight.
On the order of the manager of the skating rink, the New Orleans police officers then "cleared" the skating rink, ordering everyone to leave. Testimony indicated that some of the police officers were informed by other people present at the skating rink that some of the people in the parking lot were passing guns around and that Mr. Wright should not be allowed to leave because he was in danger. The testimony is inconsistent concerning how long Mr. Wright and Ms. Williams were held in the office; however, they were eventually allowed or required to leave. Mr. Wright testified by perpetuation testimony that he had been asking to go home ever since he was taken into the office.
Mr. Wright joined his friends in the automobile in which he had arrived. After the automobile left the skating rink parking lot, approximately one-half to one block away, occupants of another vehicle opened gunfire on the car occupied by Mr. Wright. Although the car contained seven young men, only Mr. Wright, who was seated in the middle of the back seat, was *877 hit by a bullet. He was rendered a quadriplegic as a result of the shooting.
Mr. Wright filed suit against inter alia Skate Country and the City of New Orleans.[1] The basis for the suit against the City was the alleged negligence of the police officers working at Skate Country on the "paid detail." The issues against the City were bifurcated and the liability issue was tried on November 18-20, 1996. On January 29, 1997, the trial court issued judgment on the liability issues, holding the City liable for Mr. Wright's injuries based on a finding that the police officers were negligent in the following two respects: (1) not allowing Mr. Wright and Ms. Williams to stay inside the building for a longer period of time after clearing the building, and (2) failing to arrest the individuals involved in the altercation.
Trial on the damage issue was scheduled for September 29, 1997; however, the damage issue was settled in a pre-trial conference on the morning of trial. At that time, the parties dictated a consent judgment into the record stipulating that the damages sustained were $2,300,000, plus legal interest, plus court costs and expert witness fees. The City appeals, assigning four alleged errors:
1. The district court failed to apply the duty/risk analysis correctly so as to determine that the plaintiff's injuries were not proximately caused by the defendant police officers' actions or inaction.
2. The district court erred in concluding that the police officers violated a duty owed to the plaintiff.
3. The district court erred in finding that the police officers' actions were the legal cause of the plaintiff's injuries.
4. The district court erred in holding that the officers' actions were in the course and scope of their City employment although they were off-duty and working as security guards for a private employer.
Because we find merit in the City's fourth assignment of error, we pretermit discussion of the first three issues.

APPEALABILITY OF JUDGMENT
As a preliminary matter, we must decide whether this court has jurisdiction to hear the City's October 8, 1997 appeal of the January 29, 1997 judgment on liability. On June 29, 1998, some nine months after both the September 29, 1997 consent judgment on damages and the October 8, 1997 filing of the instant appeal, the trial court issued a per curiam, in which she held that "the January 29, 1997 judgment which determined the issue of liability was a final judgment and that the appeal delays began to run on February 8, 1997."
Accordingly, the plaintiffs claim that the only issue presented to the court in the instant appeal is damages, which are the subject of a non-appealable consent judgment. Moreover, the only issue raised in the City's appeal is liability, the plaintiffs note. Thus, the plaintiffs have filed at least two motions to dismiss the appeal, both of which were denied by writ panels. The Louisiana Supreme Court also denied writs after this court's first denial. In denying the second motion on July 31, 1998, this court stated as follows:
Plaintiffs' motion to dismiss the appeal is denied. On March 13, 1998, this court denied plaintiffs' prior motion to dismiss which raised the same issues as plaintiffs argue in the present motion. According to the Supreme Court's writ disposition attached to plaintiffs' motion, the Supreme Court denied certiorari and specifically reserved plaintiffs' right to re-urge their argument: "Issue may be reraised in the even of adverse judgment."
Thus, the issue of the appealability of the liability judgment remains to be decided by this court.
*878 Under the 1997 amendments to La. C.C.P. art.1915(5), a partial judgment on liability in a bifurcated trial, such as the judgment at issue in this case, is not immediately appealable in the absence of an express determination by the trial court or agreement by the parties. The amendment went into effect on July 1, 1997, approximately six months after the liability judgment in this case. However, it is well-settled in Louisiana law that procedural laws are to be applied retroactively unless the legislature specifies that they be applied prospectively only; the legislature did not specify that the 1997 amendments should be applied retroactively to this case.
In fact, this court has previously held that the 1997 amendment to La. C.C.P. art.1915 is to be applied retroactively. Scott v. American Tobacco Co., Inc., 97-1973, p. 1 (La.App. 4 Cir. 11/4/98), 737 So.2d 47, citing Kaufmann v. Fleet Tire Service, 97-1428 (La.9/5/97), 699 So.2d 75. In both Scott and Kaufmann, the cases were remanded to the trial court for a determination of the finality and appealability of the partial judgment. See also Young v. Dupre Transport, 97-0591 (La. App. 4 Cir. 10/1/97), 700 So.2d 1156.
The procedural posture of the instant case is different from the posture of the cases discussed above. In the instant case, no need to remand to the trial court for a determination is necessary because the trial court has already decided that issue and issued a per curiam, indicating that the liability judgment should be considered final and appealable. However, the trial judge's per curiam was not issued until 18 months after the judgment it attempted to designate as final on the day it was originally issued. Moreover, the per curiam went a step beyond that requirement and stated that the appeal delays began on February 8, 1997, a date some 18 months prior to the issuance of the per curiam on June 29, 1998.
We find that the trial court went beyond its authority in attempting to set the date for the commencement of the appeal period some 18 months prior to the issuance of the per curiam designating the judgment as a final judgment, immediately appealable. We find that the only way to make this case consistent with Kaufmann and Scott is to hold that the appeal delays began on September 29, 1997, the date of the consent judgment on damages. Accordingly, we find that the appeal was timely filed on October 8, 1997. The plaintiffs' claim that this court lacks jurisdiction to hear the appeal has no merit.

"COURSE AND SCOPE" OF EMPLOYMENT
The trial court's reasons for judgment do not contain a clear statement on the "course and scope" of employment issue. The majority of the trial court's reasons concern findings of negligence on the part of the police officers in handling the situation leading up to the shooting of Mr. Wright. In the second paragraph of the "Analysis" section, the reasons state the court's finding "that the officers were under a duty to primarily perform the duties of a police officer." The trial court's statement that the off-duty police officers were "primarily performing the duties of a police officer," is not a finding that they were in the course and scope of their employment with the City at the time of the incident, as the dissent suggests. The court simply found that a police officer who was not named in the suit, but who testified at trial, Robert Montgomery, was negligent, stating as follows: "Although Officer Robert Montgomery was not a named defendant, this Court finds that his actions were negligent and he was an employee of NOPD." Interestingly, the court granted a directed verdict in favor of the only two police officers named in the action, John Ray and Tommy Mercadel, finding that no liability was shown against those two officers individually.
The trial court's finding that Officer Montgomery was an "employee" of the New Orleans Police Department is insufficient *879 to render the City vicariously liable for his negligence. That issue turns on whether Officer Montgomery was in the "course and scope" of his employment for the City at the time of his alleged negligent actions, an issue which was not addressed by the trial court in the reasons for judgment.
Determination of the vicarious liability issue is a mixed question of law and fact. Russell v. Noullet, 98-0816, p. 5 (La.12/1/98), 721 So.2d 868, 871. Although a trial court's determination that a particular action of an employee falls within the course and scope of his employment is subject to the manifest error standard, the trial court made no determination on that issue in this case. See Id. Thus, we are not bound by the manifest error standard. Consideration of this issue in light of Louisiana law and jurisprudence convinces us that the trial court improperly imposed liability for Mr. Wright's injuries on the City under the facts and circumstances of this case. For the reasons more fully set forth below, this conclusion is inescapable, even assuming that the Court was correct in finding that Officer Montgomery acted negligently and that Mr. Wright's injuries were caused, at least in part, by Officer Montgomery's negligent actions.

Louisiana law concerning course and scope of employment
The statutory basis for Louisiana's classic vicarious liability doctrine is found in La. C.C. art. 2320, which provides as follows:
Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
See also LSA-R.S. 9:3921.
Generally, an employer is considered vicariously liable for torts committed by an employee while the employee is in the "course and scope" of his employment duties. Baumeister v. Plunkett, 95-2270, p. 3 (La.5/21/96), 673 So.2d 994, 996; Orgeron on Behalf of Orgeron v. McDonald, 93-1353, p. 4 (La.7/5/94), 639 So.2d 224, 226. An employee's conduct is considered to fall within the course and scope of his employment duties "if the conduct is of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer." Orgeron at 4, 639 So.2d at 226-27. In order for the employer to be held vicariously responsible for the torts of his employee, the employee's conduct must be "so closely connected in time, place, and causation" to the employee's employment duties "that it constitutes a risk of harm attributable to the employer's business." Id. at 4, 639 So.2d at 227. See also Russell, 97-0085 at p. 5, 706 So.2d at 544; Baumeister at 3, 673 So.2d at 996. Employers generally are not considered liable for "conduct instituted by purely personal considerations entirely extraneous to the employer's interest." LeBrane v. Lewis, 292 So.2d 216, 218 (La. 1974); Noullet, 97-0085 at 5, 706 So.2d at 544. However, the employee's conduct need only be reasonably incidental to the performance of the employee's official duties, and need not be exclusively employment rooted. Miller v. Keating, 349 So.2d 265, 269 (La.1977).
A study of Louisiana caselaw reveals that courts apply somewhat different analyses in deciding the course and scope issue depending on whether the actions of the employee causing the damages were negligent or intentional. Because this case involves a negligent act, the analysis below focuses on cases involving allegedly negligent employees. Moreover, despite the fact, as stated above, that determination of the course and scope issue is a mixed question of law and fact, numerous Louisiana cases involving alleged negligent acts of police officers have been decided by Louisiana courts; those cases must be considered in determining the City's liability in this case. Finally, two Louisiana cases *880 have decided the exact issue presented herei.e. whether a governmental authority may be held vicariously liable for the negligent acts of an off-duty peace officer working a paid, private detail. Ultimately, those cases control our determination in this case.

Negligent acts by employees
The factors employed by Louisiana courts to determine whether an employee's negligent conduct falls within the "course and scope" of his employment duties were listed in Orgeron as follows: (1) "the payment of wages by the employer," (2) "the employer's power of control," (3) "the employee's duty to perform the particular act," (4) "the time[,] place and purpose of the act in relation to service of the employer," (5) "the relationship between the employee's act and the employer's business," (6) "the benefits received by the employer from the act," (7) "the motivation of the employee for performing the act," and (8) "the reasonable expectation of the employer that the employee would perform the act." Id., 639 So.2d at 227, citing Reed v. House of Decor, Inc., 468 So.2d 1159 (La. 1985).

Negligent acts by off-duty peace officers
A more specific category of cases concerning vicarious liability to be considered prior to application of the law to the facts of this case is the category of cases considering a governing body's vicarious liability for the tortious actions of off-duty peace officers. A study of the cases indicates that, traditionally, the factual connection between the actions of the peace officer and his job responsibilities in such cases can be very tenuous, but nevertheless result in a finding of liability on the part of the governing body. See, e.g, Johnson v. Gantt, 606 So.2d 854 (La.App. 2 Cir.), writ denied, 608 So.2d 196 (La.1992); Johnson v. Dufrene, 433 So.2d 1109 (La.App. 4 Cir.), writ denied, 441 So.2d 765 (La.1983). But see Roberts v. Benoit, 605 So.2d 1032 (La.1991).
However, two recent Louisiana casesone decided by the Louisiana Supreme Court and one decided by this courthave significantly undermined the traditional rule making municipalities liable for damages caused by the negligence of off-duty peace officers based on tenuous connections to police duties. In Russell, 98-0816, 721 So.2d 868, the Louisiana Supreme Court reversed a judgment imposing liability on the City of New Orleans for damages which occurred when an off-duty police officer, who became involved in an altercation while drinking beer with his brothers, negligently fired his weapon into a crowd. In reaching that decision, the Supreme Court clearly distinguished, perhaps for the first time, between the "course of employment" test, and the "scope of employment" test. Id. The court stated as follows:
While the course of employment test refers to time and place, the scope of employment test examines the employment-related risk of injury. The inquiry requires the trier of fact to determine whether the employee's tortious conduct was "so closely connected in time, place, and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests."
Id. at p. 2, 721 So.2d at 871 (citations omitted). Citing the similarities with the actions of the off-duty officer in Roberts, the court found in Russell that "the specific activity which caused the harm to [the plaintiff] was not in furtherance of his employer's interest, and his shooting into the crowd for self-protection was a response to a situation brought on by personal conduct rather than by the exercise of police authority." Id. at p. 4, 721 So.2d at 874. This result prevailed despite the fact that the defendant had identified himself as a police officer prior to shooting his weapon into the crowd. Id. at 2, 721 So.2d at 871. As noted by the dissent, Russell is factually distinguishable from the instant case; nevertheless, the case does demonstrate *881 the Supreme Court's current attitude toward course and scope issues involving off-duty police officers.
Prior to the Russell decision, this court reversed a trial court judgment against the City based on the alleged negligence of an off-duty police officer who caused a hit-and-run accident while driving an unmarked police vehicle. Hanson, 97-1467, 719 So.2d 627. The police officer had attended several parties sponsored by persons associated with the police union prior to the accident. Id. Despite the fact that the officer testified that he considered himself "on duty" at all times, this court found insufficient evidence that the police department had exercised any direct control over his activities on the night in question. Thus, the court stated, "the relationship between Lt. Benelli's activities on the night in question and his employment duties was insufficient to establish that this accident occurred while he was in the course and scope of his employment." Id. at p. 13, 719 So.2d at 635. Thus, the most recent jurisprudence indicates a retreat from the traditional rule imposing liability on a governing body for the alleged negligence of an off-duty police officer if any connection to his employment exists.

Negligent acts of off-duty peace officers working paid private details
The last category of vicarious liability cases, which is directly applicable to the issues in this case, is the category of cases determining a governing body's liability for negligent acts of off-duty peace officers working private details and being paid by private employers. A review of the caselaw on this issue reveals that only two cases on that issue have been reported in the last quarter of the 20th century; both of those held that the governing body cannot be held liable.
The most recent Louisiana case on this issue is Luccia v. Cummings, 94-416 (La.App. 5 Cir. 11/16/94), 646 So.2d 1142, writ denied, 94-2983 (La.2/3/95), 649 So.2d 406, which involved a uniformed levee district police officer hired by a nightclub as a bouncer and peace-keeper. The plaintiff, a nightclub employee, claimed that he had been injured when the police officer physically attacked him. Id. The court denied liability to the plaintiff, holding that none of the LeBrane factors was satisfied and that the police officer was outside the scope of his employment as a police officer, relieving the levee board of vicarious liability. Id. at 1144. The court likewise found no basis for primary liability. Id.
This court has decided only one reported case on this issueDuryea v. Handy, 96-1018 (La.App. 4 Cir. 10/3/97), 700 So.2d 1123. In that case, an off-duty sheriff's deputy hired by a Mardi Gras parade organization, struck an off-duty police officer in the face with his arm as he threw a bag of beads into the crowd. Id. The sheriff's deputy was "working as security for the parade through the Sheriff's office, on what is known as a `paid detail.'" Id. at p. 5, 700 So.2d at 1127. In finding no liability on the part of the sheriff's office, the court stated as follows:
[The sheriff's deputy's] actionsresponding to the wishes of krewe guests while on the parade routeare far more tied to his employment by the Gentilly Carnival Club than his employment by the Sheriff's office. Although the complicated relationship between the two entities makes a determination difficult, we must hold the Gentilly Carnival Club to be [the deputy's] sole employer during the time in question. As a result, we will not hold the Sheriff's office liable for damages incurred by [the off-duty deputy] in this incident.
Id. at p. 6, 700 So.2d at 1128.
The only Louisiana case imposing liability on a governing body for the negligent acts of an off-duty peace officer working a paid, private detail is Cheatham v. Lee, 277 So.2d 513 (La.App. 1 Cir.), writ denied, 279 So.2d 696 (La.1973). However, this court's much more recent opinion in *882 Duryea must prevail over a 25-year-old case from another circuit.
The facts in the instant case do not differ significantly from those considered by this court in Duryea. In fact, if anything, the allegations against the peace officers in question in the instant case are less egregious than the allegations against the sheriff's deputy in Duryea because all the allegations in the instant case are related to negligent omissions, passive negligence. If the active negligence of the sheriff's deputy working the paid detail in Duryea is insufficient to support the imposition of liability on the sheriff's office, then the passive negligence of the police officers in the instant case is insufficient to support imposition of liability on the City. As in Duryea, the police officers in the instant case were the employees of a private employee, Skate Country, not employees of the New Orleans Police Department, at the time of Mr. Wright's shooting.
Our conclusion that a governing body may not be held vicariously liable for the negligent acts of off-duty, uniformed peace officers working paid, private details is also supported by the court's conclusion in Kramer v. Continental Casualty Co., 92-1131 (La.App. 3 Cir. 6/22/94), 641 So.2d 557, writ not considered, 94-2576 (La.12/19/94), 648 So.2d 399, writs denied, 94-2373, 94-2474, 94-2475 (La.12/19/94), 648 So.2d 402, 403, that off-duty police officers working security at a motel were motel employees, rather than independent contractors. Although the facts of the Kramer case are, as the dissent points out, very different from the facts of the instant case, the decision nevertheless supports our conclusion that the police officers were employees of Skate Country, not employees of the City of New Orleans at the time of their negligent omissions. The primary question in Kramer was whether the off-duty peace officers working security at the hotel were hotel employees, or independent contractors. The decision does not address the primary question in this casei.e., whether the off-duty police officers were employees of the City; that issue was never raised in Kramer. Nevertheless, the court unquestionably found in Kramer that the off-duty police officers working the paid detail were employees of the hotel, indicating that police officers working paid details are legally the employees of the private employer. Certainly the off-duty peace officers in Kramer could not have been considered employees of the governing body because they were found to be employees of the private employer. Thus, the Kramer decision provides some support for our conclusion that the off-duty police officers in the instant case were employees of Skate Country, not the City of New Orleans, at the time of the incident which provides the basis for this case.

Conclusion
Accordingly, the trial court judgment imposing liability on the City of New Orleans for the negligence of off-duty, uniformed police officers working a paid, private detail at Skate Country is reversed. Judgment is rendered dismissing the plaintiffs' action against the City.
REVERSED AND RENDERED.
WALTZER, J., CONCURS IN THE RESULT.
McKAY, J., CONCURS WITH REASONS.
JONES, J., DISSENTS WITH REASONS.
McKAY, J., concurring with reasons.
I concur with the majority's opinion finding that the City of New Orleans was not liable for the death of Lioney Wright. However, I do so for other reasons.
I believe Officer Montgomery was in the "course and scope" of his employment as a New Orleans Police Officer at the time of the incident at Skate Country. Although Officer Montgomery was working a paid detail for Skate Country, this does not negate his function as a police officer. In *883 fact, the department sets guidelines as to how details operate and determines what and how officers working these details are paid. Even more important than this, officers still exercise police powers while working these details and are dressed in their NOPD uniforms. Accordingly, I would find that officer Montgomery was in the "course and scope" of his employment.
However, I do not believe that Officer Montgomery was negligent. At the time of the incident, he acted as a reasonably prudent person would have acted, if placed in that situation. Furthermore, it was not foreseeable that Mr. Wright would be shot after he left Skate Country.
JONES, J., dissenting with reasons.
The majority concludes that the trial court erred in finding the City vicariously liable for the death of Lioney Wright. Further, the majority concludes that the trial court did not find that Officer Robert Montgomery was in the "course and scope" of his employment as a New Orleans Police Officer when his alleged acts of negligence occurred. Finally, the majority, citing Russell v. Noullet, 97-0085 (La.1/14/98), 706 So.2d 540, 543, rev'd on other grounds, 98-0816 (La.12/1/98), 721 So.2d 868, conclude that the question of the City's vicarious liability in this case is a mixed question of law and fact With these conclusions the majority proceeds to reverse the trial court judgment before us. I disagree.
The determination of whether a police officer was in the course and scope of his employment is a factual determination to be made by the trial court. Further, in the matter sub judice, the majority does not challenge the factual findings of the trial court. Rather, they reverse the judgment and justify same by stating that there is no vicarious liability as a matter of law. I think this is in error.
The majority reverses the judgment of the trial court solely on the question of whether these off duty police officers were in the course and scope of their employment. They argue that "the trial court's Reasons for Judgment do not contain a clear statement on the course and scope of employment issue." This statement is incorrect.
The trial court clearly states in the Reasons for Judgment that:
Pursuant to the New Orleans Police Department Regulation in ASOP (sic), a paid detail is the employment of any commissioned member of the Department by another individual, business establishment, or organization where the member is privately paid and is primarily performing the duties of a police officer, either in plainclothes or in uniform.
Thus, the trial court found that the police officers in the case sub judice were in the course and scope of their employment because they were "... primarily performing the duties of a police officer ..."
The instant matter is easily distinguished from Noullett. In Noullett, the police officer was off duty and drinking with his family, and he only chose to try and perform the "police function" after he failed in an effort to help his brother in a fight. In the matter sub judice, the police were at all times performing the "police function". Thus, to reverse the trial court's determination that either the police officers in general, or Officer Montgomery, in particular, was negligent, the majority must find that the trial court was clearly wrong. They failed to find such error. Instead, the majority states that "... the trial court made no determination on that (course and scope) issue ..." Again, the majority is in error.
Further, the majority makes a quantum leap in concluding that the police officers in the instant matter "... were employees of Skate Country, not employees of the City of New Orleans at the time of their negligent omissions." The majority cites Kramer v. Continental Casualty Co., 92-1131 (La.App. 3 Cir. 6/22/94), 641 So.2d 557. The majority fails to note that an *884 argument was made in Kramer that the police were independent contractors and thus not in the course and scope of their employment. This issue has not been presented in the matter sub judice.
Therefore, for the reasons above indicated, I respectfully dissent.
NOTES
[1] At some point prior to trial, Mr. Wright died, apparently of the injuries sustained as a result of the gunshot wounds; his parents were substituted as party plaintiffs at the trial.