# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-1222


ROBERT J. LEJEUNE

VERSUS

BELL TOWER CORPORATION
AND DALLAS NATIONAL INSURANCE COMPANY


************


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 03
PARISH OF CALCASIEU, NO. 07-9745
HONORABLE SAM LOWERY
WORKERS' COMPENSATION JUDGE


************


## JIMMIE C. PETERS
### JUDGE


************


Court composed of Ulysses Gene Thibodeaux, Chief Judge, and Jimmie C. Peters and J. David Painter, Judges.


**AFFIRMED AS AMENDED.**

Gregory P. Marceaux
Attorney at Law
2901 Hodges Street
Lake Charles, LA 70601
(337) 310-2233
COUNSEL FOR APPELLEE/PLAINTIFF:
    Robert J. LeJeune

Anthony P. Palermo
James R. Raines
Attorneys at Law
One American Place - Suite 2300
P. O. Box 3197
Baton Rouge, LA 70821
(225) 387-4000
COUNSEL FOR DEFENDANTS/APPELLANTS:
    Bell Tower Corporation and
    Dallas National Insurance Company

PETERS, J.

The defendants, Bell Tower Corporation and Dallas National Insurance Company (collectively referred to as Bell Tower), appeal the judgment of the workers' compensation judge (WCJ) in favor of the plaintiff, Robert J. LeJeune, finding that Mr. LeJeune suffered a work-related injury to his hand while employed by Bell Tower. The WCJ awarded Mr. LeJeune indemnity benefits, ordered that he be allowed treatment by the physician of his choice, and awarded him penalties and attorney fees. For the following reasons, we affirm the judgment as amended.

## DISCUSSION OF THE RECORD

Bell Tower, an Oklahoma corporation, designs, manufactures, ships, and constructs broadcast towers. In July 2007, it was hired to construct a 1,700 foot broadcast tower in Wiggins, Mississippi. Richard Bell, the sole owner of Bell Tower, contacted David Traxler about assembling a crew to build the Mississippi tower. In turn, Mr. Traxler called Mr. LeJeune with a job offer. Mr. LeJeune was hired, but the parties dispute when this occurred. Mr. LeJeune claims that he was hired while he still in Louisiana. Mr. Bell claims that Mr. LeJeune was not hired until after he arrived in Mississippi.

On September 15, 2007, Mr. LeJeune suffered a work-related injury to his left hand while operating a winch on site. He reported the accident to Mr. Traxler, who relayed the information to Mr. Bell. Mr. LeJeune sought no medical treatment until he returned to Louisiana approximately four days after the incident. He was treated at the W.O. Moss Regional Medical Center in Lake Charles and then by Dr. Dale Bernauer, a Lake Charles orthopedic surgeon. However, he received no further treatment due to his inability to pay for the medical services and Bell Tower's refusal to pay.

Mr. LeJeune filed a disputed claim for compensation against Bell Tower seeking indemnity benefits, medical treatment, and penalties and attorney fees. In response, Bell Tower filed declinatory exceptions of lack of subject matter and personal jurisdiction and improper venue and a peremptory exception of no cause of action. Bell Tower asserted that Mr. LeJeune's claim was governed by Mississippi law because he was hired in and suffered injury while working in Mississippi. Mr. LeJeune later amended his disputed claim to add Bell Tower's insurer, Dallas Insurance Company, as a defendant.

Following a trial on the merits, the WCJ rendered judgment in favor of Mr. LeJeune and denied Bell Tower's exception of lack of subject matter jurisdiction. The WCJ held that Mr. LeJeune suffered a work-related injury while an employee of Bell Tower and that he was temporarily and totally disabled as a result. The WCJ awarded Mr. LeJeune $522.00 in weekly indemnity benefits from the date of injury and medical treatment by a physician of his choice, Dr. Bernauer. The WCJ further held that the previous medical treatment provided to Mr. LeJeune by W.O. Moss Regional Medical Center was reasonable and necessary and cast Bell Tower with payment of the $268.92 bill. The WCJ awarded Mr. LeJeune penalties: $2,000.00 for Bell Tower's failure to pay indemnity benefits; $2,000.00 for its failure to provide medical care; and $2,000.00 for its failure to pay W.O. Moss Regional Medical Center. Mr. LeJeune was awarded an additional $13,500.00 in attorney fees.

Bell Tower appeals alleging three assignments of error committed by the WCJ:

1.      Whether the trial court erred in holding it had subject matter jurisdiction over LeJeune's claims based upon its finding that a Louisiana contract for hire existed between the parties despite the fact that the Codal requirements for a contract did not exist.

2

2.  Whether the trial court erred in finding claimant's alleged injuries resulted from the purported workplace accident despite clear evidence of a prior injury to the same body part.

3.  Whether the trial court erred in awarding penalties and attorney fees against defendant despite its presentation of a clearly defensible legal position.

Mr. LeJeune answered Bell Tower's appeal and seeks additional attorney fees for work performed on appeal.

## OPINION

It is well settled that the standard of review applied in workers' compensation cases is the "manifest error-clearly wrong" standard. *Dean v. Southmark Constr.*, 03-1051, p. 7 (La. 7/6/04), 879 So.2d 112, 117.

> Accordingly, the findings of the OWC will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety. *Alexander [v. Pellerin Marble & Granite*, 93-1698 (La. 1/14/94)], 630 So.2d [706,] 710. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Robinson v. North American Salt Co.*, 02-1869 (La.App. 1 Cir.2003), 865 So.2d 98, 105. The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Robinson*, 865 So.2d at 105. The determination of whether injury occurred in the course and scope of employment is a mixed question of law and fact. *Winkler v. Wadleigh Offshore, Inc.*, 01-1833 (La.App. 4 Cir. 4/24/02), 817 So.2d 313, 316 (citing *Wright v. Skate Country, Inc.*, 98-0217 (La.App. 4 Cir. 5/12/99), 734 So.2d 874).

*Id.*

Louisiana Revised Statutes 23:1035.1(1) allows an employee injured outside of Louisiana the benefits of its workers' compensation laws if his employment was principally situated here or if he was employed under a contract of hire originating here. Of paramount importance in determining the location of an employee's contract

3

of hire is the parties' intent. *Baldwin v. N. Am. Energy Servs.*, 07-667 (La.App. 3 Cir. 10/31/07), 970 So.2d 101, *writ denied*, 07-2310 (La. 2/1/08), 976 So.2d 717. Furthermore, the WCJ's finding on this issue is factual in nature.

Mr. LeJeune, who lives in Sulphur, Louisiana, testified that in July of 2007, he was contacted by Mr. Traxler about the job in Mississippi. He stated that he went to Mr. Traxler's home, also in Sulphur, and while there, spoke to Mr. Bell by telephone. Mr. LeJeune testified that Mr. Bell offered him employment at $20.00 per hour and $75.00 per diem, and he accepted that offer.

Soon thereafter, Mr. LeJeune and Mr. Traxler traveled from Sulphur to Wiggins, Mississippi, and were immediately reimbursed their travel expenses. However, it was not until a few days later that Mr. LeJeune completed the employment paperwork. That paperwork was channeled through Harbor America Texas, Inc. (Harbor America), a company which handled the payroll for all of Mr. Bell's employees and pays workers' compensation insurance. The accident giving rise to this litigation occurred on September 15, 2007.

Mr. Traxler's testimony supported Mr. LeJeune's version of the circumstances surrounding the hiring process. He testified that he builds radio and television towers for a living and was working in Austin, Texas, when Mr. Bell first contacted him about constructing the Wiggins' tower. According to Mr. Traxler, after he returned home to Sulphur in July of 2007, Mr. Bell again contacted him about the Wiggins job and talked to him about assembling a crew for the job. According to Mr. Traxler, both he and Mr. LeJeune were in Sulphur when they reached employment terms with Mr. Bell. Specifically with regard to Mr. LeJeune, Mr. Traxler testified that after determining Mr. LeJeune's interest in the job, he had him telephone Mr. Bell. As a

4

result of that telephone conversation, Mr. Bell hired Mr. Lejeune as a winch operator and his pay rate was agreed on. Mr. Traxler also confirmed Mr. LeJeune's testimony that the two men traveled together to Wiggins, Mississippi; that both were reimbursed for their travel; and that the employment papers were issued through Harbor America.

Mr. Bell testified that Bell Tower is headquartered in Chelsea, Oklahoma, and the company is engaged in the design and construction of broadcast towers. He confirmed the Wiggins tower contract and testified that Bell Tower constructed the tower and then installed it in September 2007. He acknowledged first contacting Mr. Traxler about the job while Mr. Traxler was working in Texas. Although he could not recall the particulars of the conversation with Mr. Traxler, he acknowledged that he hired Mr. Traxler before the Wiggins job began. Although he denied giving Mr. Traxler the authority to hire Mr. LeJeune for the job, when questioned about whether he asked Mr. Traxler to put together a crew, Mr. Bell stated, "Somewhat." He said that Bell Tower has a work crew, but explained that it experiences a large turnover of employees. Prior to the Wiggins' job, Mr. Bell testified that Mr. Traxler suggested a couple of men for the crew. As he was familiar with these men, he said that he gave Mr. Traxler the authority to hire them. He stated that the men, who he thought were in Texas, called him, and they reached an agreement as to their pay and per diem. Mr. Bell specifically denied the telephone conversation with Mr. LeJeune whereby Mr. LeJeune suggested he had been hired by Mr. Bell.

Mr. Bell testified that Mr. LeJeune was not hired until he arrived in Wiggins. In fact, he stated that the first time he either met or spoke to Mr. LeJeune was at a café in Wiggins on July 19, 2007. Mr. Bell stated that he hired Mr. LeJeune at approximately 10:00 a.m. and agreed to pay him $20.00 per hour and $75.00 per

5

diem. He admitted that he reimbursed Mr. LeJeune's travel from Sulphur to Wiggins, in part because the amount was insignificant, but also because Mr. Traxler informed him that they needed Mr. LeJeune because he could operate any piece of equipment at the site and because their current operator was unreliable.

In finding that Mr. LeJeune was hired in Louisiana, the WCJ stated in his oral reasons:

> All of the evidence, and not just the live testimony, forces the conclusion that Mr. LeJune [sic] certainly behaved as if he had a reasonable and legitimate expectation that he was hired in Louisiana before he, in the company of his supervisor, embarked to Mississippi, as did his employer. There was not a word of testimony even suggesting that Mr. LeJune [sic] felt that his employment hinged on the face-to-face meeting with the owner of the company in the café. Rather, he relied, and reasonably so, on the company's designated representative that he was hired.

> The *juris prudence* stands four square for the position that Louisiana has subject matter jurisprudence if a claimant has a reasonable expectation that he has been hired in Louisiana before he sets off to a job site outside the state. In the *Harvey* case, the Court was apparently impressed by the fact that the claimant would not have left his home in Louisiana to go to Virginia had he not been certain the job was there.

> That situation seems to be replicated in the instant matter. The employer was very clear that he paid the wages for Mr. LeJune's [sic] travel from his home in Sulphur to Mississippi. I'm really hard pressed to see how much more the employer could have done to convince Mr. LeJune [sic] that he was hired by the company's representative in Sulphur. The recollection and reflection of the employer that he really meant to hire Mr. LeJune [sic] in Mississippi especially after the occurrence of an accident does seem convenient and transparently so. Every Third Circuit case I am familiar with supports the claimant's argument that this Court has subject matter jurisdiction under the provisions of 23:1035.1.

After reviewing the record, we can find no error in the WCJ's factual finding that Mr. LeJeune was hired by Bell Tower while he was in Louisiana. As pointed out by the WCJ, the facts at issue mirror those found in *Harvey v. B E & K Construction*, 30,825 (La.App. 2 Cir. 8/19/98), 716 So.2d 514. In *Harvey*, the injured employee

6

learned of a job in Virginia while working for the employer at a job in Alabama. After returning home to Louisiana, the employee accepted the Virginia job from the employer via telephone. The employee later suffered an injury while working in Virginia. The court in that matter affirmed the WCJ's finding that Louisiana had subject matter jurisdiction despite the fact that the employee's paperwork, drug test, and physical were not completed until his arrival in Virginia. The court held that the employee's verbal agreement with the employer while still in Louisiana, determined the location of his contract of hire. In reaching this holding, the court relied on *Ohlhausen v. Sternberg Dredging Co.*, 218 La. 677, 50 So.2d 803 (1951), in which the supreme court held, under similar facts, that the determinative factor was the existence of a definitive agreement between the parties prior to the employee's departure from Louisiana for employment in Florida.

In the case now before us, the WCJ was presented with two differing views of the evidence on the origin of Mr. LeJeune's contract of hire and chose to credit the testimony of Mr. LeJeune and Mr. Traxler over that of Mr. Bell. This factual determination is supported by the testimony of Mr. Bell, who admitted to hiring at least three other employees over the phone, in the same fashion as alleged by Mr. LeJeune, i.e., Mr. Traxler and the two crew members recommended by him. As this is a finding of fact, the WCJ's finding that Mr. LeJeune's contract of hire originated in Louisiana will not be reversed absent manifest error. We find no such error present. Accordingly, the judgment of the WCJ, finding that Louisiana had subject matter jurisdiction over Mr. LeJeune's cliam, is affirmed.

Next, Bell Tower argues that the WCJ erred in finding that Mr. LeJeune's injuries were caused by his work-related accident rather than by a previous incident

7

involving the same arm. Bell Tower relies on the October 16, 2007 medical records of the W. O. Moss Regional Medical Center in which Mr. LeJeune presented with the request to see a specialist for his left hand/arm. The record reveals that Mr. LeJeune suffered a laceration to his left arm six months prior to that date. Bell Tower argues that it was this incident which caused his complained of condition.

In order to receive workers' compensation benefits, an injured employee must establish a causal connection between their work-related accident and the resulting complained of disability. *Davis v. State ex rel. Dept. of Transp. and Dev., Office of Risk Management*, 09-288 (La.App. 3 Cir. 11/10/09), __ So.3d __. The burden of proof is by a preponderance of the evidence. That being the case, if the probability of causation is equally balanced based on the evidence presented, then the employee has not carried his burden of proof. *Guilbeaux v. Office of District Attorney*, 07-89 (La.App. 3 Cir. 5/30/07), 957 So.2d 959.

Mr. LeJeune testified that he injured his left hand while respooling wire onto the winch. He stated that the wire had gone off the spool and that he grabbed it with his left hand to guide it back onto the spool. According to Mr. LeJeune, while he was guiding the wire back onto the spool, a finger on his left hand became stuck in the winch. Mr. LeJeune immediately reported the accident to Mr. Traxler, who alerted Mr. Bell about the incident. Mr. LeJeune testified that Mr. Bell's response to Mr. Traxler was that if Mr. LeJeune's finger was not cut off, he should continue working as they were in a hurry. Mr. LeJeune stated that he remained on the job for another four to five days.

Eventually, Mr. LeJeune returned to Sulphur and sought treatment from the W. O. Moss Regional Medical Center in Lake Charles. He stated that the facility was

unable to help him and recommended that he see a specialist at the LSU. Medical Center, but he could not obtain treatment there due to a lack of funds. He was eventually able to see Dr. Bernauer, who ordered an EMG of his left hand. This test was never performed, and Mr. LeJeune said that he sought no further treatment from Dr. Bernauer because Bell Tower refused authorization. Mr. LeJeune testified that the nerves are damaged in his left hand and that he now suffers numbness and weakness in that hand. He stated that his hand is now much smaller as a result of this injury.

The October 16, 2007 records from the W. O. Moss Regional Medical Center reflect that Mr. LeJeune suffered a laceration to his left arm six months previously, and he complained of numbness in his left hand/forearm, along with a loss of sensation and atrophy of the muscles in the lateral aspect of his hand/arm. The emergency room doctor diagnosed Mr. LeJeune as suffering from traumatic neuropathy in his left hand and recommended that he go to LSU Shreveport for further treatment of this condition.

During cross examination, Mr. LeJeune denied that the laceration listed in the October 16, 2007 medical records was the cause of his left hand problems. Mr. LeJeune explained that the laceration resulted from a cut he suffered on March 10, 2007. On that day, Mr. LeJeune reported to the emergency room of the West Calcasieu Cameron Hospital after being cut with a box cutter. The cut was described as an approximated five-inch-long-flap laceration down to the muscle and was located on the back of his upper left arm, between his shoulder and his elbow. Mr. LeJeune testified that he experienced no problem with his arm after this incident. He

stated that his current problems are a result of the smashing injury he suffered on September 15, 2007.

Mr. Traxler testified that when Mr. LeJeune suffered his injury, he was operating a large friction winch, which weighed approximately 4,000 to 7,000 pounds. According to Mr. Traxler, the winch was older equipment and did not contain a leveler to ensure that the cable being wound onto the spool remained level. Mr. LeJeune was attempting to compensate for this lack of leveler when he caught his hand in the winch. Mr. Traxler stated that he learned about Mr. LeJeune's accident over the radio. When he reached him, Mr. LeJeune was holding his hand and appeared to be in pain. Mr. Traxler reported the injury to Mr. Bell, who asked if Mr. LeJeune had suffered any real damage, to which Mr. Traxler stated, "nothing that I could see." On questioning, however, he stated that the winch did trap Mr. LeJeune's hand; that it was smashed. Mr. Traxler testified that Mr. LeJeune received no medical attention after the incident. He explained that Mr. LeJeune thought that he could shake the injury off, but he left the job several days later to return home to Louisiana and seek medical treatment. According to Mr. Traxler, Mr. LeJeune's job performance in the days after the accident was clearly affected by his injury, and prior to his injury, Mr. LeJeune was one of his best workers.

Mr. Bell testified that Mr. LeJune's accident was communicated to him in Oklahoma three to four days after it occurred. According to Mr. Bell, Mr. Traxler informed him that Mr. LeJeune had mashed his finger in the winch. He inquired of Mr. Traxler concerning the need for medical treatment and was told that the injury was not that serious. Mr. Bell stated that he never spoke to Mr. LeJeune about his injury.

10

Dr. Bernauer examined Mr. LeJeune once on June 30, 2008. In the report to Mr. LeJeune's attorney, he noted numbness in the ring and little fingers of Mr. LeJeune's left hand, atrophy of the adductor, and that his little finger was contracted and would not extend. Dr. Bernauer stated that x-rays were negative for fracture. He said that he had ordered an EMG of Mr. LeJeune's left hand and that he had restricted him from working.

In finding that Mr. LeJeune satisfactorily proved his work-related injury, the WCJ held that there was no evidence countering Mr. LeJeune's version of events and that the medical evidence presented supported this finding. We find no error in the WCJ's finding. Although the medical records are sparse, as pointed out by the WCJ, it was reasonable for the WCJ to conclude that the recent crushing injury to Mr. LeJeune's left hand was the cause of the traumatic neuropathy of his left hand rather than the earlier cut to his upper arm. Considering the size of the winch Mr. LeJeune was operating at the time he was injured, it is more likely that the crushing injury suffered by him, which was confirmed by Mr. Traxler, caused his complained of condition rather than the five-inch knife cut to the upper arm.

In its final assignment of error, Bell Tower argues that the WCJ erred in awarding Mr. LeJeune penalties and attorney fees despite its presentation of a clearly defensible position. Bell Tower bases its "defensible" position on Mr. Traxler's observation to Mr. Bell that Mr. LeJeune had not suffered major damage to his hand and that he appeared to be all right. It also relies on the fact that Mr. LeJeune continued working after the accident and that he told Mr. Traxler that he thought he could shake off the injury.

11

Mr. Bell testified that he learned of the accident after his return to Oklahoma. When told about the injury by Mr. Traxler, he stated that he asked if Mr. LeJeune required medical attention. He said that Mr. Traxler replied in the negative, stating that Mr. LeJeune's injury was not really that bad. Mr. Bell testified that Mr. LeJeune's wife called him approximately one week after the accident about Mr. LeJeune's per diem payment. At the end of the conversation, he stated that she asked, "well, what about his hand." Mr. Bell testified that he told Mrs. LeJeune that it was too late to file a claim on Mr. LeJeune's hand. He said that she then responded that they would go to a free clinic to seek medical care. When questioned about this, Mr. Bell stated that it was his understanding that a claim had to be reported immediately so that the injured party could receive medical attention. Mr. Bell admitted that he did nothing further to investigate Mr. LeJeune's injury. Instead, he relied only on the initial accounts by Mr. Traxler and Mr. LeJeune that Mr. LeJeune's injury was not serious. With regard to Mr. LeJeune's demand letter of July 2, 2008, in which he sought authorization for medical treatment by Dr. Bernauer and the payment of indemnity benefits, Mr. Bell stated that he did not recall whether he received the letter. However, he testified that had he received it, he would have forwarded the letter to Harbor America, who managed the workers' compensation matters for Bell Tower. Other than that, he stated that he performed no investigation into this matter.

Pursuant to La.R.S. 23:1201(F), an employer who fails to commence payment of indemnity benefits or to pay medical benefits timely shall be subject to penalties and attorney fees unless the employer reasonably controverts the employee's claim. *Zavala v. St. Joe Brick Works*, 07-2217 (La.App. 1 Cir. 10/31/08), 999 So.2d 13, *writ denied*, 08-2827 (La. 1/30/09), 999 So.2d 762. A claim is reasonably controverted

if the employer has sufficient factual and/or medical information to counter the evidence presented by the employee. *Id.* Furthermore, an employer has a duty to furnish all reasonable and necessary medical care resulting from an employee's work-related injury. La.R.S. 23:1203(A); *Wilczewski v. Brookshire Grocery Store*, 08-718 (La.App. 3 Cir. 1/28/09), 2 So.3d 1214, *writ denied*, 09-456 (La. 4/13/09), 5 So.3d 170.

> The failure to authorize a medical procedure for an employee otherwise eligible to receive workers' compensation is deemed to be the failure to furnish compensation benefits, thereby subjecting the employer to an assessment of attorney fees and penalties, unless the claim is reasonably controverted or such nonpayment results from conditions over which the employer had no control. La. R.S. 23:1201; *Sims v. BFI Waste Services, L.L.C.*, 06-1319, p. 11 (La.App. 1st Cir.5/16/07), 964 So.2d 998, 1005.

*Sevin v. Chevrolet*, 08-1362, p. 15 (La.App. 1 Cir. 4/30/09), 24 So.3d 879, 889.

The determination of whether an employer should be cast with penalties and attorney fees is a question of fact. Accordingly, the WCJ's award of penalties and attorney fees will not be reversed absent manifest error. *Maddox v. Texas Gas Transmission Corp.*, 07-906 (La.App. 3 Cir. 12/05/07), 971 So.2d 541, *writ denied*, 08-64 (La. 3/7/08), 977 So.2d 911.

In awarding a total of $6,000.00 in penalties and $13,500.00 in attorney fees, the WCJ stated that Bell Tower "did virtually nothing to investigate this claim. That behavior is as much a violation of the statute as it is of conscience, and that worker here was severely injured." A review of the record reveals that this finding was reasonable. Mr. Bell admitted that he performed no investigation at all into this matter. Rather, he relied on second-hand accounts that Mr. LeJeune had not suffered a serious injury to his hand. Then, when asked by Mr. LeJeune's wife directly about his injury, he told her that it was too late for Mr. LeJeune to file a claim regarding his

13

injury. Accordingly, the judgment of the WCJ awarding Mr. LeJeune $6,000.00 in penalties and $13,500.00 in attorney fees is affirmed.

Mr. LeJeune answered Bell Tower's appeal and seeks additional attorney fees for work performed on appeal. Considering our finding, we amend the judgment to award him an additional $5,000.00 in attorney fees.

## CONCLUSION

For the foregoing reasons, the judgment of the workers' compensation judge is affirmed in all respects. We further amend the judgment to award Mr. LeJeune an additional $5,000.00 in attorney fees for work performed by his counsel on appeal. The costs of this appeal are assessed to Bell Tower Corporation and Dallas National Insurance Company.

**AFFIRMED AS AMENDED.**