# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 10-0045


ROBERT MINOR

VERSUS

J & J CARPET, INC.


************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 1E
PARISH OF OUACHITA, NO. 08-02465
HONORABLE BRENZA IRVING JONES
WORKERS' COMPENSATION JUDGE

************

## JIMMIE C. PETERS
## JUDGE

************

Court composed of John D. Saunders, Jimmie C. Peters, and, Elizabeth A. Pickett, Judges.


**AFFIRMED AND RENDERED.**

Paul H. Benoist
Benoist Law Offices
329 Market Street
Natchez, MS 39120
(601) 445-4148
COUNSEL FOR PLAINTIFF/APPELLEE:
    Robert Minor

Donald J. Anzelmo
Snellings, Breard, Sartor, Inabnett
& Trascher, L.L.P.
Post Office Box 2055
Monroe, LA 71207
(318) 387-8000
COUNSEL FOR DEFENDANT/APPELLANT:
    J & J Carpet, Inc.

PETERS, J.

The defendant, J & J Carpet, Inc., appeals a workers' compensation judgment finding that the plaintiff, Robert Minor, was injured in a work-related accident and awarding him indemnity benefits, medical treatment, and penalties and attorney fees. Mr. Minor answered the appeal seeking an increase in the amount of attorney fees and attorney fees for work performed on appeal. For the following reasons, we affirm the judgment and award Mr. Minor attorney fees for legal services rendered on appeal.

## DISCUSSION OF THE RECORD

Mr. Minor was employed as a granite fabricator and installer by J & J Carpet, Inc. (J & J), in Vidalia, Louisiana. On Friday, January 11, 2008, Mr. Minor felt a pop in his back and a sharp pain down to his feet after bending down to pick up a piece of granite. After telling his co-worker that he had injured his back, Mr. Minor went home. Because he experienced increasing pain and the loss of strength in his legs, Mr. Minor's mother, Sandra Washington, took him to emergency rooms at two hospitals in Natchez, Mississippi, shortly after the accident. Mrs. Washington eventually contacted the partner of the Jackson, Mississippi neurosurgeon who had performed back surgery on Mr. Minor two years previously[1], and was advised to bring her son to Jackson without delay. Mr. Minor eventually underwent back surgery on January 14, 2008, or three days after the accident.

Although Mr. Minor reported his injury to J & J on January 14 and requested that the matter be handled pursuant to workers' compensation, his employer never provided him with medical treatment or indemnity benefits. J & J denied his claim on March 20, 2008, alleging that his injuries resulted from a deer hunting incident on

---

[1] Mr. Minor suffered a work-related injury in April 2005, and underwent back surgery in January 2006, after the van he was driving was rear-ended. At the time, Mr. Minor was employed by a different employer. J & J was aware of this injury.

the weekend prior to January 11, 2008, and not from an accident while in the course and scope of his employment.

Mr. Minor filed a disputed claim for compensation against J & J and its workers' compensation administrator, Cannon Cochran Managements Services, Inc., seeking indemnity benefits, medical treatment, vocational rehabilitation, and penalties and attorney fees. Following a hearing on the merits, the workers' compensation judge (WCJ) issued an oral ruling, which included findings that Mr. Minor suffered a work-related injury, that he was temporary and totally disabled and entitled to weekly indemnity benefits, and that he was entitled to penalties and attorney fees.

After the WCJ executed a written judgment, J & J appealed, asserting two assignments of error:

1)    The workers' compensation judge erred in finding that claimant had sufficiently met his burden of proving a work-related accident, as defined by the Louisiana Workers' Compensation Act.

2)    The workers' compensation judge erred in finding that the defendant's failure to pay temporary total disability benefits and medical expenses was arbitrary and capricious, thus entitling claimant to recover penalties and attorney fees.

Mr. Minor answered the appeal seeking an increase in the WCJ's award of attorney fees, and requesting additional attorney fees for work performed on appeal.

**OPINION**

It is well settled that the standard of review applied in workers' compensation cases is the "manifest error-clearly wrong" standard. *Dean v. Southmark Constr.*, 03-1051, p. 7 (La. 7/6/04), 879 So.2d 112, 117.

> Accordingly, the findings of the OWC will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety. *Alexander* [*v. Pellerin Marble & Granite*, 93-1698 (La. 1/14/94)], 630 So.2d [706,] 710. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable

2

inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Robinson v. North American Salt Co.*, 02-1869 (La.App. 1 Cir.2003), 865 So.2d 98, 105. The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Robinson*, 865 So.2d at 105. The determination of whether injury occurred in the course and scope of employment is a mixed question of law and fact. *Winkler v. Wadleigh Offshore, Inc.*, 01-1833 (La.App. 4 Cir. 4/24/02), 817 So.2d 313, 316 (citing *Wright v. Skate Country, Inc.*, 98-0217 (La.App. 4 Cir. 5/12/99), 734 So.2d 874).

*Id.*

Louisiana Revised Statutes 23:1021(1) defines an "accident" as an "unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." Proof is by a preponderance of the evidence. *Bruno v. Harbert Int'l Inc.*, 593 So.2d 357 (La.1992). Thus, if the probability of causation is equally balanced based on the evidence presented, the employee has not carried his burden of proof. *Guilbeaux v. Office of Dist. Attorney*, 07-89 (La.App. 3 Cir. 5/30/07), 957 So.2d 959.

> A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. *West v. Bayou Vista Manor Inc.*, 371 So.2d 1146 (La.1979); Malone and Johnson, *13 Louisiana Civil Law Treatise, Workers' Compensation*, § 253 (2d Ed.1980). Corroboration of the worker's testimony may be provided by testimony of fellow workers, spouses or friends. Malone and Johnson, supra; *Nelson* [*v. Roadway Express, Inc.*, 588 So.2d 350 (La.1991)]. Corroboration may also be provided by medical evidence. *West, supra.*

> In determining whether the worker has discharged his or her burden of proof, the trial court should accept as true a witness's uncontradicted testimony, although the witness is a party, absent "circumstances casting suspicion on the reliability of this testimony."

*West*, 371 So.2d at 1147; *Holiday v. Borden Chemical*, 508 So.2d 1381, 1383 (La.1987).

*Bruno*, 593 So.2d at 361.

In the matter before us, Mr. Minor testified that on January 11, 2008, he was picking a piece of granite off the floor when he felt a pop in his back, which sent a sharp pain down to his feet. He immediately sat down and told his co-worker, Herbert Pahnka, that his back was hurting and he was ready to go home. Mr. Minor testified that Mr. Pahnka said, "Let's go," so they finished their work and left. According to Mr. Minor, when he arrived home, he took a hot shower, ingested two Alieve pills, and sat on the sofa in an attempt to relax. His mother and sister arrived soon thereafter,[2] and he initially told his mother that he simply wanted to lie on the sofa and wait for the pain to go away. The next morning he was still in pain and his mother transported him to the Natchez Regional Medical Center in Natchez, Mississippi.

Mr. Minor testified that he informed the emergency room personnel that he hurt his back while picking up a piece of granite at work. He was given a prescription for muscle relaxers and pain medication, was told to consult a doctor if his pain did not abate within two to three days, and discharged. The pain became progressively worse and reached the point that he was unable to support his own weight while standing without clinging to a wall for support. He was then transported by ambulance to Natchez Community Hospital, as Natchez Regional was too busy to accommodate him. The personnel at the emergency room of Natchez Community Hospital x-rayed his back, prescribed pain medication and muscle relaxers, and discharged him.

_____

[2]The three share the home.

4

When his condition continued to worsen, Mr. Minor's mother contacted Dr. Jack Moriarity[3], a Jackson, Mississippi neurosurgeon, who instructed her to bring her son to the River Oaks Hospital in Jackson as soon as possible.

Mr. Minor testified that Dr. Moriarity recommended immediate surgery and, after learning of this recommendation, he immediately telephoned his supervisor, Tate Lipscombe, and reported the injury as well as his current situation.[4] According to Mr. Minor, he informed Mr. Lipscombe that he had injured his back while cleaning up and finishing his work on the previous Friday. Mr. Minor successfully underwent surgery on the Monday after the Friday accident and remained in the Jackson, Mississippi hospital for nine to ten days.

Mr. Minor acknowledged in his testimony that he enjoys hunting and riding his four-wheeler on the weekends. He expressed no independent recollection of hunting the weekend prior to January 11, 2008.[5] Particularly, he had no recollection of hurting his back while dragging a deer out of the woods that weekend. In fact, he testified that he would have never dragged a deer out of the woods because he uses his four-wheeler for that purpose.

In support of this testimony, Mr. Minor introduced a receipt from the Natchez Deer Shop dated Saturday, January 4, 2008, reflecting charges for processing deer meat for Mr. Minor at that time. Mr. Minor explained that prior to January 4, 2008, he and Mr. Pahnka had skinned a deer on their lunch break, and he had taken this meat to the processor. He testified that while it was possible he hunted on Sunday,

---

[3]Dr. Moriarity is partners with neurosurgeon Dr. Eric Amundson. Dr. Amundson performed surgery on Mr. Minor in 2006.

[4]Mr. Minor testified that he had not reported the accident earlier because he was hoping the pain would subside.

[5]In a prior deposition, he had stated that he had hunted the previous weekend.

January 5, 2008, it was doubtful because once he took the meat to the processor, he had no reason to continue hunting.

Mrs. Washington, testified concerning her son's condition on the afternoon of January 11, 2008, and asserted that she found him sitting on the sofa, sweating and complaining of hurting all over and that his back was killing him. When she questioned him, she said he told her that he was not sure, but that when he stooped over at work, something burst loose in his back and caused him to start sweating and shaking. Mrs. Washington said that she wanted to take Mr. Minor to the hospital right then, but he told her that he just wanted to sit still because it hurt too bad to move. She testified that at some point during the night, she had to help him to the restroom because something was wrong with his legs. Afterwards, she said that he started moaning from pain when he sat down on the sofa.

According to Mrs. Washington, on Saturday morning Mr. Minor was in such pain that he was willing to go to the emergency room. She testified that she drove him to Natchez Regional, where he was given a shot and a prescription before being discharged. She was the individual who called the ambulance to transport him to Natchez Community Hospital because she could not get him into the car. When the emergency room personnel released Mr. Minor to return home,[6] she tried to reach her son's former neurosurgeon by telephone. When she explained her son's condition to Dr. Moriarity, he told her to bring him in immediately. Mrs. Washington testified that she drove Mr. Minor to River Oaks, where he was immediately taken to the

_____

[6]According to Mrs. Washington, the emergency room personnel informed her and her son that, although they realized there was something seriously wrong with Mr. Minor, he needed to see a doctor and there was nothing else they could do form him.

emergency room. She stated that Dr. Moriarity called her early Monday morning to tell her that Mr. Minor required surgery.

Mrs. Washington testified that Mr. Minor was fine prior to starting work Friday, January 11, 2008, but that after work, he was sweating and complaining of back pain. She stated that he did not miss any work the week leading up to the afternoon of January 11.

Mr. Pahnka, a granite fabricator and installer for J & J, testified that he and Mr. Minor were the only employees in the shop on the afternoon of January 11, 2008. He acknowledge that Mr. Minor told him that he was not feeling well and was going home, but denied that Mr. Minor told him he had hurt his back. Had Mr. Minor related the back injury, Mr. Pahnka asserted in his testimony, he would have told Mr. Minor to call either Mr. Lipscombe or Marc Archer, the owner. In fact, it was Mr. Pahnka who provided the information concerning the deer hunting accident that caused J & J to deny Mr. Minor's claim for benefits.

According to Mr. Pahnka, on the Monday prior to the Friday, January 11, 2008 accident, Mr. Minor told him that he had hurt his back while dragging a deer out of the woods and that he might be moving a little slow at work. Additionally, Mr. Pahnka stated that he helped Mr. Minor pop some dents from the fender of a Denali SUV that Mr. Minor had sustained when driving the vehicle into the woods to retrieve the deer. He recalled that Mr. Lipscombe was present during this discussion. He described Mr. Minor as less talkative than normal in the week preceding the accident, and he testified that he never saw Mr. Minor pick up any granite on January 11. In fact, according to Mr. Pahnka, the only tasks performed by Mr. Minor on that day were polishing the granite, picking up waste material, and sweeping up the shop.

7

He recalled no installations on that day as well. Thus, there would have been no reason to pick up the granite except with the use of a fork lift. Mr. Pahnka testified that sometime after January 11, Mr. Lipscombe asked him if Mr. Minor had injured himself at work and he responded in the negative.

Nonetheless, Mr. Pahnka admitted that Mr. Minor worked the entire week up to January 11, 2008, without any complaints of pain. Specifically, he testified that at no point in time did Mr. Minor every complain of back problems. Mr. Pahnka testified that he went to Mr. Minor's home once or twice and that he went with him to his grandfather's home once to pick up his four-wheeler.

Mr. Lipscombe, J & J's Natural Stone manager, testified that he first became aware of Mr. Minor's injury on the morning of Monday, January 14, 2008, when he received four telephone calls from Mr. Minor. According to Mr. Lipscombe, the first telephone call occurred at approximately 7:00 a.m. when Mr. Minor telephoned to explain that he would be absent from work because of his back injury. Approximately twenty minutes later, according to Mr. Lipscombe, Mr. Minor called again to report that he had injured his back at work the previous Friday and that he was undergoing surgery. At the conclusion of this call, Mr. Lipscombe stated that he informed Mr. Archer of the situation. The third telephone call occurred at approximately 9:30 a.m., when Mr. Minor telephoned to tell him that his injury was a workers' compensation claim. Mr. Lipscombe testified that Mr. Minor called back a final time to inform tell him that he needed workers' compensation to pay for the surgery as he had no insurance. He testified that he told Mr. Minor that the matter was out of his hands. He then alerted Mr Archer, who told him that he would handle the matter.

8

Mr. Lipscombe testified that Mr. Minor and Mr. Pahnka were the only employees working in the shop on January 11, 2008, and that when questioned, Mr. Pahnka recounted to him a normal work day during which they fabricated granite and then cleaned the shop. He testified that Mr. Pahnka told him Mr. Minor had no reason to pick anything up, and that Mr. Minor left early that day because he felt unwell, not because he hurt his back.

According to Mr. Lipscombe, on the Monday before the accident, Mr. Minor told him and Mr. Pahnka that he had killed two deer that weekend and that he had to drag them approximately two hundred yards and he messed up his truck retrieving the deer from the woods. He reported Mr. Minor as stating that he would be a little sluggish that week because he hurt his back.

Mr. Lipscombe admitted that because Mr. Minor's basic duties on January 11, 2008, were to clean the shop and finish up any loose projects, he could have picked up smaller pieces of granite while performing these tasks. He further acknowledged that the only time Mr. Minor related any back complaints to him before January 11, 2008, was the preceding Monday, and he did recall Mr. Pahanka assisting Mr. Minor with a deer before that week.

Natchez Community Hospital's medical records establish that Mr. Minor arrived there by ambulance at 2:19 a.m. on January 13, 2008. Although the records show that Mr. Minor had no known injury to his back, "lifting" is circled and below that is written "works _ granite." Furthermore, Dr. Moriarity's report in River Oaks' medical records states:

> The patient was at work and finished a normal day of wok and felt a "pop" and pain in his low back or lower thoracic spine. He said he felt pain down both lower extremities to his feet. He denies any history of bowel or bladder incontinence but he did notice bilateral lower

9

extremity at the onset of these symptoms. He had persistence of them on Saturday. He said he felt a little bit worse and went to the emergency room in Natchez. He was treated symptomatically and sent home. He noticed an increase in weakness and returned at about 1 - 2 in the morning on Sunday, today. He was treated symptomatically again and sent home and told to contact Dr. Eric W. Amundson for further management. This was roughly 2:30 in the afternoon today. I told them to immediately proceed to the River Oaks emergency room for need of obtaining MRI imaging. Today the patient reports that he is able to move both lower extremities but is unable to walk. He has difficulty supporting his weight. He still denies any bowel or bladder incontinence. He says his feet felt numb and he feels numb up to his waist.

The medical records from Natchez Regional were not obtained by counsel due to problems associated with that hospital's bankruptcy proceedings.

In finding that Mr. Minor carried his burden with regard to the existence of a work-related injury, the WCJ relied on the fact that Mr. Minor performed his work duties, including heavy lifting, in the days preceding Friday, January 11, 2008, and did so without any complaints of pain, and, commencing with the alleged incident, he immediately became symptomatic and ultimately underwent emergency surgery on Monday, January 14, 2008. The WCJ found corroboration for Mr. Minor's version of events in the testimonies of his mother, Mr. Lipscombe, and Mr. Pahnka, and in the medical records.

The primary factual dispute in this matter concerns whether Mr. Minor went hunting the weekend prior to his accident. However, we find that whether he hunted the weekend prior to January 11 is not dispositive of this issue. After reviewing the record, we find no error in the WCJ's determination that Mr. Minor suffered a work-related accident on January 11, 2008. Essentially, the WCJ concluded that if he had injured himself hunting, there was no way Mr. Minor could have worked an entire week without complaint, considering the severity and seriousness of his symptoms.

10

We agree that Mr. Minor could not possibly have engaged in his work duties, including lifting pieces of granite, if suffering from a severe compromise of his thoracic spinal cord at T10-11. Even Mr. Lipscombe and Mr. Pahnka agreed that other than the Monday morning after his alleged weekend of hunting, Mr. Minor made no complaints of back pain. Accordingly, the WCJ judgment finding that Mr. Minor suffered a work-related accident is affirmed.

The next issue concerns the WCJ's award of penalties and attorney fees based on J & J's arbitrary and capricious actions in denying Mr. Minor workers' compensation benefits. J & J argues that the WCJ erred in awarding these amounts, whereas Mr. Minor has answered the appeal arguing that the WCJ's $7,000.00 attorney fee award is abusively low.

Louisiana Revised Statutes 23:1201(F) provides for the imposition of penalties and attorney fees if the employer fails to provide payment of compensation or medical benefits or fails to approve the employee's request to select a treating physician or change of physician, if approval is required. The statute limits the amount of each penalty to $2,000.00, but caps the total amount in penalties which may be awarded at $8,000.00. However, no penalties and attorney fees will be assessed if the employer has reasonably controverted the employee's claim or if the nonpayment resulted from a condition which was beyond the employer's control. La.R.S. 23:1201(F)(2). Furthermore, the WCJ's award of attorney fees, that is the actual amount awarded, is entitled to great discretion and will not be disturbed on appeal absent an abuse of that discretion. *Williams v. Tioga Manor Nursing Home*, 09-417 (La.App. 3 Cir. 11/18/09), 24 So.3d 970, *writ denied*, 10-298 (La. 4/9/10), 31 So.3d 389.

11

The WCJ held that Mr. Minor was entitled to penalties and attorney fees because J & J based its denial solely on his alleged hunting activities the weekend prior to January 1, even though it knew that he subsequently worked the entire week without any complaints of back pain. Finding that J & J's basis for denial was not supported by the record, the WCJ awarded Mr. Minor $4,000.00 in penalties and $7,000.00 in attorney fees.

Considering our affirmation of the WCJ's finding that Mr. Minor easily proved the occurrence of a work-related accident and the fact that both of J & J's witnesses admitted that Mr. Minor worked without complaints during the days preceding the January 11 accident, we find no error in the award of penalties and attorney fees. Moreover, we find that the WCJ did not abuse her discretion in awarding Mr. Minor $7,000.00 in attorney fees. Had we been sitting as the trier of fact, we might have awarded a greater amount; however, we find that the amount awarded was reasonable and not an abuse of discretion.

Mr. Minor further requests that we award additional attorney fees for the legal services rendered by his counsel in successfully defending this appeal. Accordingly, we render judgment in favor of Mr. Minor to award an additional $5,000.00 in attorney fees for legal services rendered on appeal.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the WCJ in all respects. We further render judgment to award an additional $5,000.00 in attorney fees for legal services rendered by Mr. Minor's counsel's successful defense of this appeal. We assess all costs of this appeal to J & J Carpet, Inc.

**AFFIRMED AND RENDERED.**

12