STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-396


LINDA MILES

VERSUS

PINECREST DEVELOPMENTAL CENTER


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 2
PARISH OF RAPIDES, NO. 10-06128
JAMES L. BRADDOCK, WORKERS COMPENSATION JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and James T. Genovese, Judges.


AFFIRMED.

Genovese, J., concurs in the result.


Brian D. Cespiva
Attorney at Law
711 Washington St.
Alexandria, LA 71301
(318) 448-0905
COUNSEL FOR DEFENDANT APPELLANT:
    Pinecrest Developmental Center

**Maria Anna Losavio**
**Losavio Law Firm**
**1821 MacArthur Drive**
**Alexandria, LA 71315**
**(318) 767-9033**
**COUNSEL FOR PLAINTIFF APPELLEE:**
     **Linda Miles**

**SAUNDERS, Judge.**

In this workers compensation appeal, Pinecrest Developmental Center appeals Claimant's awards for permanent total disability benefits, statutory penalties, and attorney fees. We affirm the judgment and award Claimant $5,000 for attorney fees in connection with defending this appeal.

## UNDISPUTED FACTS

Ms. Linda Miles was employed as an LPN at Pinecrest Development Center when, on April 17, 2000, she was injured in the course and scope of her employment. Ms. Miles received workers compensation benefits for 524 weeks until May 2, 2010, when Defendant discontinued her compensation benefits, prompting Ms. Miles filed this claim seeking reinstatement of her benefits.

On October 5, 2011, Claimant and her son testified at her hearing as did adjuster Lisa Vincent, an employee of FARA Insurance Services, on behalf of Defendant. In addition, voluminous medical depositions, records, and reports were introduced into the record. These items included not only medical exhibits submitted by Claimant and Defendant, but an Independent Medical Examination report submitted by a specialist to whom Claimant was referred prior to the hearing.

Following submission of post-trial memoranda, the workers compensation judge ruled in favor of claimant, finding her eligible for reinstatement of benefits, penalties and attorney fees, citing among other evidence the testimony of treating psychologist James Quillin, Ph.D., and the report of the third party Independent Medical Examiner to whom Ms. Miles had been referred by the workers compensation judge.

## ASSIGNED ERRORS

Defendant assigns several errors on appeal. Defendant cites a combination of legal and manifest error in finding Claimant's injury compensable under La.R.S.

23:1201.8 (D). It also cites manifest error on the part of the workers compensation judge in finding that Claimant established by clear and convincing evidence that she is permanently and totally disabled given the relatively minor physical injury she had sustained more than ten years earlier and in finding that it had acted arbitrarily and capriciously when it terminated her benefits.

*Assigned Legal Error*

We first examine the legal error alleged by Defendant. A compensable injury is required before a claimant can collect temporary total disability benefits, supplemental earnings benefits, or permanent total disability benefits of the type awarded by the WCJ in this case. La.R.S. 23:1221.

Defendant claims that the workers compensation judge should not have awarded benefits, citing La.R.S. 23:1021 (8)(d), recited below in its statutory context (emphasis added):

§1021. Terms defined

As used in this Chapter, unless the context clearly indicates otherwise, the following terms shall be given the meaning ascribed to them in this Section:

. . . .

(8)(a) "Injury" and "personal injuries" include only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, however caused or contracted.

. . . .

(c) Mental injury caused by physical injury. A mental injury or illness caused by a physical injury to the employee's body shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence.

(d) No mental injury or illness shall be compensable under either Subparagraph (b) or (c) unless the mental injury or illness is diagnosed by a licensed psychiatrist or psychologist

2

and *the diagnosis of the condition meets the criteria as established in the most current issue of the Diagnostic and Statistical Manual of Mental Disorders presented by the American Psychiatric Association.*

The parties stipulated that Claimant sustained back, neck, and other injuries while acting in the course and scope of her employment, and Defendant neither claims that the workers compensation judge could not have found claimant entitled to benefits under La.R.S. 23:1201 (8)(c), nor that Ms. Miles' mental injury or illness was not diagnosed by a licensed psychologist under La.R.S. 23:1201 (8)(d). Rather, Defendant's claim hinges on whether that diagnosis met criteria established in the most current issue of the Diagnostic and Statistical Manual as required by the same provision.

The record contains references to DSM Axes I-III, hallmarks of the Diagnostic and Statistical Manual of Disorders. For example, psychologist William Lowe, Ph.D., to whom Claimant was referred by the Office of Workers Compensation on October 19, 2010, made specific diagnoses with respect to DSM Axis I (chronic depressive disorder), Axis II (passive dependent and others), and Axis III (morbid obesity, diabetes, chronic pain and others).

Therefore, we find no merit to this argument.

*Manifest Errors*

Next we turn to Defendant's allegations that the workers compensation judge committed manifest error in finding that Claimant had established by clear and convincing evidence that she is permanently and totally disabled given the relatively minor physical injury she had sustained more than ten years earlier.

> It is well settled that the standard of review applied in workers' compensation cases is the "manifest error-clearly wrong" standard. *Dean v. Southmark Constr.*, 03-1051, p. 7 (La.7/6/04), 879 So.2d 112, 117.

3

Accordingly, the findings of the OWC will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety. *Alexander* [*v. Pellerin Marble & Granite*, 93-1698 (La.1/14/94) ], 630 So.2d [706,] 710. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Robinson v. North American Salt Co.*, 02-1869 (La.App. 1 Cir.2003), 865 So.2d 98, 105. The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Robinson*, 865 So.2d at 105. The determination of whether injury occurred in the course and scope of employment is a mixed question of law and fact. *Winkler v. Wadleigh Offshore, Inc.*, 01-1833 (La.App. 4 Cir. 4/24/02), 817 So.2d 313, 316 (citing *Wright v. Skate Country, Inc.*, 98-0217 (La.App. 4 Cir. 5/12/99), 734 So.2d 874).

*Minor v. J & J Carpet, Inc.,* 10-45, pp. 2-3 (La. App. 3 Cir. 6/2/10), 40 So.3d 434, 436-437.

By the same token, we would be remiss were we not to acknowledge Defendant's point that the manifest error rule can only go so far.

There is no legitimate conflict in testimony where documents or objective evidence so contradict the witness's story, or the story presented by the witness is so internally inconsistent or implausible on its face, that a reasonable fact-finder could not give credence to the witness's testimony. Faced with such circumstances, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.

*Henderson v. Nissan Motor Corp.*, 2003-606 (La.2/6/04), 869 So.2d 62, 68-69 (internal citations to *Stobart*, 617 So.2d 880, 882, omitted).

The record evidence in this case, however, does not warrant or permit our departure from the general rule.

Defendant stipulates that Claimant suffered a work-related accident and injuries for which it paid benefits for ten years, but now maintains that her injuries did not rise to the level of being permanently totally disabling. Rather, Defendant

suggests that Claimant's inability or refusal to return to work is attributable to malingering.

The record does contain such evidence. Defendant's expert, Dr. Rennie Culver, M.D., Ph.D, concluded that no work restrictions were warranted from a psychiatric perspective, sentiments essentially echoed by another Defense expert, Dr. Thomas Staats, a neuropsychologist. Additionally, as Defendant notes, in 2011 Claimant's pain specialist, Dr. Stephen Katz, M.D., responded affirmatively by check mark to a FARA questionnaire inquiring as to the permanence of Claimant's disability.

However, Dr. Culver only saw Claimant once, in 2008, before producing a twenty-three page report that concurred in the "unanimous agreement that at the very least there [was] a huge psychogenic overlay to her physical complaints," and found it "obvious that her prognosis for further improvement [was] poor" due partly to the depression long observed by her long-time treating physician. Dr. Culver also candidly admitted that he could not tell whether pain symptom magnification that he detected was conscious, unconscious, or both on Ms. Miles's part.

Meanwhile, Dr. Quilin, after treating Ms. Miles for years, was convinced that any symptom magnification she might have exhibited was (at worst) unconscious or more likely the result of physiological changes that chronic pain sufferers sometimes exhibit, and the force of Dr. Katz's evidence was expressly limited by Defendant's mandate to exclude any disabling contributions provided by "health issues unrelated to [her] work injury," never mind Dr. Katz's explicit handwritten statement that, if she were not permanently disabled, "*[Claimant would need] to be conditioned and returned slowly to work.*" Defendant does not argue that Claimant has been conditioned to return to work.

5

The record contains other evidence to support the workers compensation judge's conclusion that Claimant discharged her burden of proof. Dr. Quillin, who treated Claimant for ten years, unequivocally concluded that Ms. Miles is permanently totally disabled, the victim of disabling symptoms that are very real to her, and physiological by cause and progression.

Apparently the workers compensation judge, torn by conflicting evidence prior to hearing, referred Ms. Miles for the independent medical examination by Dr. Lowe, who ultimately sided with Claimant's treating psychologist: "Dr. Quillin noted that she has reached MMI from a psychological perspective, and I agree with this opinion. . . . I concur that it is very unlikely that Mrs. [sic] Miles will ever return to gainful employment."

Although like the other experts Dr. Lowe did feel Claimant was exaggerating her symptomology, he did not find it "unusual given . . . this lady's apparent personality style," noting that Dr. Culver himself concluded that Mrs. Miles' "prognosis for further improvement is very poor" and Defense expert neuropsychologist Dr. Thomas Staats' observation that "research suggests that Mrs. Miles will unlikely return to occupational functioning regardless of discharge from medical, chronic pain, and psychological treatment or any cessation of benefits."

Reviewing the record in its entirety, we cannot say that the conclusion reached by the workers compensation judge was manifestly erroneous. Faced with conflicting testimony, the workers compensation judge referred Claimant for another opinion which he ultimately found persuasive.

*Penalties and Attorney Fees*

Finally, the parties both raise and issue dealing with penalties and attorney fees awards. Defendant avers that it did not act arbitrarily and capriciously in

terminating Claimant's benefits. Claimant answers Defendant's appeal, requesting additional attorney fees associated this appeal.

The workers compensation judge's findings were based upon the age of the medical reports upon which Defendant relied in choosing to terminate benefits.

> "In determining whether an employer's actions are arbitrary and capricious, the crucial inquiry is whether the employer can articulate an objective reason for terminating benefits at the time of the termination." *Doyal v. Vernon Parish Sch. Bd.*, 06-1088, p. 10 (La.App. 3 Cir. 2/7/07), 950 So.2d 902, 909, *writ denied*, 07-832 (La.6/15/07), 958 So.2d 1190. Whether an employer is arbitrary and capricious is a finding of fact, which is reviewed pursuant to the manifest error standard of review. Id. However, the WCJ's award of penalties and attorney fees, that is the actual amount awarded, is entitled to great discretion and will not be disturbed absent an abuse of that discretion. *Int'l. Maint. Corp. v. Stoddard*, 05-676 (La.App. 3 Cir. 12/30/05), 918 So.2d 1077.

*Williams v. Tioga Manor Nursing Home*, 09-417, p. 22 (La.App. 3 Cir. 11/18/09), 24 So.3d 970, 984, *writ denied*, 10-298 (La. 4/9/10), 31 So.3d 389.

We find no abuse of discretion or manifest error on the part of the workers compensation judge, given the support in the record for the worker compensation judge's finding that Defendant terminated Claimant's benefits in May 2010 based upon a February 2008 report by Dr. Culver. As Ms. Vincent conceded, Defendant did not reassess its initial decision to terminate benefits after Drs. Quillin and Lowe in 2010 determined Claimant was indeed disabled, and the record does not suggest that Defendant offered Claimant the conditioning recommended by Dr. Katz as a precondition to the eventual re-employment Defendant maintained at the hearing to be possible.

Where an insurer or employer first receives a favorable medical report but later receives information indicating the possibility of a continuing disability, it may not blindly rely on the earlier report to avoid sanctions. *Bennett v. Pilgrim's*

*Pride*, 04-753 (La.App. 3 Cir. 10/10/07), 972 So.2d 423, *writ denied*, 08-103 (La. 3/7/08), 977 So.2d 907.

We therefore affirm the award of penalties and attorney fees, and award Claimant an additional $5,000 for attorney fees associated with defending this appeal.

DECREE

For the foregoing reasons, the judgment of the Office of Workers' Compensation is affirmed, Claimant is awarded an additional $5,000 for attorney fees associated with defending this appeal, and Defendant is cast with costs of these proceedings.

**AFFIRMED.**