STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**MARK E. MADDOX**

**VERSUS**

**TEXAS GAS TRANSMISSION CORPORATION, ET AL.**

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 03
PARISH OF CALCASIEU, NO. 005-05310
HONORABLE SAM LOWERY,
WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

**JIMMIE C. PETERS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and James T. Genovese, Judges.

**AFFIRMED.**

**J. Craig Jones**
**Craig R. Hill**
**Jones & Hill, L.L.C.**
**131 Highway 165 South**
**Oakdale, LA 71463**
**(318) 335-1333**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Mark E. Maddox**

**Patrick F. Robinson**
**Law Office of Keith S. Giardina**
**9100 Bluebonnet Centre, Suite 300**
**Baton Rouge, LA 70809**
**(225) 293-7272**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Gulf South Pipeline Company, L.P.**
    **Liberty Mutual Insurance Company**

PETERS, J.

In this workers' compensation case the defendants, Gulf South Pipeline Company, L.P. (Gulf South) and its workers' compensation insurer, Liberty Mutual Insurance Company (Liberty Mutual), appeal a judgment in favor of Gulf South's former employee, Mark Maddox. For the following reasons, we affirm the judgment of the workers' compensation judge (WCJ) in all respects.

## DISCUSSION OF THE RECORD

Mark Maddox began working for Gulf South in October of 2004 as a pipeline operator. Included within his duties were inspecting, repairing, and maintaining pipelines, and Gulf South provided him with an 'all-terrain' vehicle, more commonly referred to as a 'four-wheeler,' to use in performing those duties, as well as a trailer to haul the four-wheeler.

On February 16, 2005, Mr. Maddox was returning from a field inspection when he had to abandon the trailer near his home because of difficulties with one of the wheels. The following day Mr. Maddox returned to the disabled trailer, removed the wheel, and took it with him to find bearings to repair it. He testified that while he was removing the wheel, his back gradually became stiff and painful.

Mr. Maddox testified that after purchasing bearings, he returned to the disabled trailer and, as he took the trailer tire out of the back of his pickup truck, he felt a pain in his lower back. At about that time Kenneth Mahaffey and Roger Broussard, both lifelong acquaintances of Mr. Maddox, drove by the disabled trailer. Observing that Mr. Maddox seemed to be having difficulty, they stopped to help. Mr. Mahaffey testified at trial that he asked Mr. Maddox what was wrong, and that Mr. Maddox said that he had hurt his back. Mr. Broussard repaired the trailer while Mr. Mahaffey and Mr. Maddox watched.

Mr. Maddox did not immediately report his back injury to anyone at Gulf South. He testified at trial that he did not report the incident because he had just begun work for Gulf South, he considered the back injury as "no big deal," and he hoped that it was simply a stiff back. He finished his assigned duties on February 17, and was not scheduled to return to work until the next Monday, February 21, 2005. Mr. Maddox testified that on the day he returned to work, he again strained his back while attempting to loosen a rusty pipe. Again, Mr. Maddox did not report this injury to anyone at Gulf South. He testified that he continued to work the remainder of the week, but was not required to perform any strenuous physical work during that time. Despite his best hopes, his injured back continued to trouble him.

On Friday, February 25, 2005, Mr. Maddox was at home, preparing to go to a high school basketball game to watch one of his sons play, when he began to experience muscle spasms in his back. They began as he bent down to pull on his boots and were so severe that he fell to the floor. He remained in bed the rest of the weekend. When he finally sought medical attention at a hospital emergency room on Sunday of that weekend, he reported to the medical personnel that he injured his back while pulling on his boots. He was then treated for an acute low back strain and was released.

In an attempt to give his back time to heal, Mr. Maddox did not return to work the next week after his emergency room visit. His excuse to Gulf South for not working was that he was injured while pulling on his boots. His back pain did not subside, and, on March 7, 2005, Mr. Maddox sought treatment from his family physician, Dr. Herbert Nesom, Jr. Again, he related the cause of his pain to the incident while pulling on his boots. Dr. Nesom diagnosed an acute back strain and

2

prescribed medication. The following week Dr. Nesom released Mr. Maddox to return to regular duty, but, because of recurring pain, Mr. Maddox did not return to work. Instead, he returned to see Dr. Nesom on March 24, 2005. At that time Dr. Nesom suggested a lumbar MRI and referred his patient to a neurosurgeon, Dr. M. Lawrence Drerup. When performed, the MRI results revealed disc protrusions at L1-2 and L5-S1.

In the history given to Dr. Drerup, Mr. Maddox still referenced his pain to the February 25 incident at his home. Given his history as well as the MRI results, Dr. Drerup, on April 8, 2005, recommended lumbar epidural steroid injections, another MRI, and additional diagnostic testing.

Mr. Maddox testified that when he returned to Dr. Nesom on April 11, 2005, the doctor informed him that a back injury as severe as his was unlikely to be caused by the mechanics of pulling on a boot. It was at this point that Mr. Maddox expanded the history of his back condition by informing Dr. Nesom of the events of February 17, 2005, that occurred while he worked on the trailer. The next day, Mr. Maddox informed his supervisor at Gulf South that he had suffered a work-related injury.

Mr. Maddox testified that on the same day he spoke with his supervisor, April 12, 2005, Steve Bienvenu, the vice-president of Gulf South, telephoned him and informed him that he [Mr. Bienvenu] was disappointed in him. Mr. Maddox was fired the following day, and Gulf South refused to pay workers' compensation or medical benefits. On July 7, 2005, Mr. Maddox filed a disputed claim for workers' compensation benefits.

Following an April 10, 2006 trial on the merits, the WCJ issued oral reasons for judgment and entered a judgment in favor of Mr. Maddox and against the

3

defendants,[1] awarding Mr. Maddox supplemental earnings benefits, medical benefits, past medical expenses, $6,000.00 in penalties, and $8,000.00 in attorney fees.

The defendants now appeal, alleging three assignments of error.

## OPINION

### *Assignment of Error Number One*

The defendants first argue that Mr. Maddox failed to prove that a work-related accident occurred. In considering this assignment of error, we note that "[t]he trial court's determinations as to whether the worker's testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error." *Bruno v. Harbert Int'l Inc.,* 593 So.2d 357, 361 (La.1992).

"[T]he plaintiff-worker in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence." *Id.* Additionally,

> A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. *West v. Bayou Vista Manor, Inc.,* 371 So.2d 1146 (La.1979); Malone and Johnson, *13 Louisiana Civil Law Treatise, Workers' Compensation*, § 253 (2d Ed.1980). Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends. Malone & Johnson, *supra; Nelson* [*v. Roadway Express, Inc.*, 588 So.2d 350 (La.1991)]. Corroboration may also be provided by medical evidence. *West, supra.*

> In determining whether the worker has discharged his or her burden of proof, the trial court should accept as true a witness's uncontradicted testimony, although the witness is a party, absent "circumstances casting suspicion on the reliability of the testimony."

---

[1]The WCJ initially signed a judgment erroneously casting Texas Gas Transmission Corporation (Texas Gas), an affiliate of Gulf South, in judgment for workers' compensation benefits. Texas Gas appealed that judgment to this court, and we remanded it to the WCJ for him to cast the correct parties in judgment. On May 17, 2007, the WCJ signed an amended judgment naming the defendants, Gulf South and Liberty Mutual, in place of Texas Gas.

*West*, 371 So.2d at 1147; *Holiday v. Borden Chemical*, 508 So.2d 1381, 1383 (La.1987).

*Id.*

The defendants' primary argument in this assignment relates to Mr. Maddox's actions and inactions in reporting the events of February 17, 2005, to Gulf South and his healthcare providers until April of 2005. In rejecting this argument, we note that Mr. Maddox explained at trial why he did not initially report the February 17 incident. As previously stated, he did not initially consider the incident significant and hoped that he merely suffered from a temporary stiff back. Of obvious importance to him was the fact that he had only recently begun work with Gulf South, and he wished to protect that relationship. This concern in protecting his employment was made more significant to him because of his past medical history. Mr. Maddox had previously suffered from a ruptured disc, and that injury had been repaired in 2000 by surgery. He had not suffered any back pain since that recovery until the February 17, 2005 incident.

Mr. Maddox testified at trial that he initially told the medical personnel and Gulf South that he injured his back while pulling on his boots because he was not aware that it was medically possible for his back pain on February 25 to be related to the back injury that occurred on February 17. He only came to understand that connection after discussions with Dr. Nesom in April of 2005.

Finally, although no one witnessed the actual injury on February 17, 2005, Mr. Mahaffey corroborated its occurrence through that which he observed and heard when he stopped to help Mr. Maddox repair the trailer.

In the oral reasons for judgment, the WCJ stated the following concerning Mr. Maddox's credibility:

5

_____The evidence suggests and the tenure [sic] and tone of the testimony, primarily from the claimant, suggests that more – it doesn't suggest, it absolutely affirms, that he's a hard working, honest individual; and for the purposes of litigation perhaps even too honest but that's beside the point. I just don't detect, nor did I detect in anything else I have heard, any suggestion of any duplicity, any malingering, anything untoward in this man. I think what happened is – the chronology suggests that he did, in fact, injure himself in this instance with the four-wheeler, and it no doubt exacerbated, either itself or it just came to fruition later on – I don't for a moment think that this man's back problem began with putting on boots. That takes a lot of imagination to even include that.

Further, the WCJ said that Mr. Maddox had "met his burden of proof and then some."

Applying the standards in *Bruno*, 593 So.2d 357, we find no manifest error in the WCJ's factual determinations. Therefore, we find no merit in the defendants' first assignment of error.

### Assignment of Error Number Two

The defendants next assert that the record fails to show that Mr. Maddox's injury was caused by the work accident on February 17, 2005. We reject this argument as well.

A claimant's disability is presumed to have been caused by an accident, if before the accident the claimant was in good health but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves, provided that the medical evidence establishes a reasonable possibility of a causal connection between the accident and the disabling condition. *West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146 (La.1979). In fact, "[o]nce the disabled employee establishes the presumption of a causal relationship, the party denying the existence of the presumed fact assumes both the burden of producing evidence and the burden of persuasion on the issue." *Walton v. Normandy Vill. Homes Ass'n, Inc.*, 475 So.2d 320, 325 (La.1985).

6

Here Mr. Maddox, whom the WCJ found to be credible, testified that before the accident he had had no back pain since 2000, but that his back was stiff and painful from the February 17, 2005 accident until he became bedridden on February 25, 2007. His treating physician, Dr. Nesom, completed a claim form on April 25, 2005, stating that the cause of Mr. Maddox's back pain was a work-related accident. This establishes the presumption that Mr. Maddox's disability was caused by the February 17, 2005 work-related accident, and the defendants did not meet their burdens of producing evidence and persuasion to the contrary.

The WCJ did not manifestly err in finding that Mr. Maddox discharged his burden of proof to show that his injury was caused by the work accident. *Bruno,* 593 So.2d 357. Accordingly, we find no merit in this assignment of error.

### *Assignment of Error Number Three*

Finally, the defendants argue that the trial court erred in finding that the denial of Mr. Maddox's claim was arbitrary and capricious so as to justify an award of penalties and attorney fees. We disagree with this argument as well.

The WCJ awarded $6,000.00 in penalties ($2,000.00 for failure to begin indemnity payments, $2,000.00 for failure to pay medical expenses, and $2,000.00 for failing to investigate the claim) and $8,000.00 in attorney fees. The determination of whether an employer should be cast with penalties and attorney fees is a question of fact which should not be reversed absent manifest error. *Romero v. Northrop-Grumman*, 01-24 (La.App. 3 Cir. 5/30/01), 787 So.2d 1149, *writ denied*, 01-1937 (La. 10/26/01), 799 So.2d 1144.

Louisiana Revised Statute 23:1201(F)(2) provides for the payment of penalties and attorney fees for the failure to provide payment of benefits unless the claim is

7

reasonably controverted or the failure to pay results from conditions over which the employer had no control.

> [T]o determine whether the claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La.R.S. 23:1201, a court must ascertain whether the employer or his insurer . . . possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.

*Brown v. Texas-LA Cartage, Inc.*, 98-1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890.

The defendants argue that their refusal to pay benefits was reasonable because of Mr. Maddox's initial statements to his medical providers and to Gulf South concerning how he injured his back. While we agree that these initial statements did not require investigation, the defendants were not entitled to "blindly rely" on these initial reports, but had "a continuing duty to investigate when [they] received the subsequent medical information." *Bradley v. ConAgra Poultry Co.*, 03-23, p. 9 (La.App. 3 Cir. 4/30/03), 843 So.2d 1255, 1261.

It is undisputed that on April 12, 2005, Mr. Maddox placed Gulf South on notice that he was claiming a work-related injury based on the February 17, 2005 incident. It is equally undisputed that on April 25, 2005, Dr. Nesom reported in the disability claim that Mr. Maddox's back injury resulted from a work-related accident. Receipt of this information gave rise to a duty on the defendants to investigate the claim.

Outside of requesting and receiving information from Dr. Nesom concerning Mr. Maddox's injury (which gave credibility to Mr. Maddox's claim that the injury was work-related), the defendants took no other steps to obtain evidence that would reasonably controvert the fact that the injury was work-related. The WCJ based his

8

award in large part on the defendants' failure to investigate Mr. Maddox's claim, stating "[t]he company's investigation could not be characterized as aggressive. I don't even think I could characterize it as existent."

We find no manifest error in the WCJ's decision to award penalties and attorney fees.

**DISPOSITION**

For the foregoing reasons, we affirm the judgment of the workers' compensation judge in all respects and assess all costs of this appeal to the defendants, Gulf South Pipeline Company, L.P. and Liberty Mutual Insurance Company.

**AFFIRMED.**